### PT TODAY, INC v COMMISSIONER OF THE OFFICE OF FINANCIAL AND INSURANCE SERVICES

Docket No. 259964. Submitted December 13, 2005, at Lansing. Decided February 28, 2006, at 9:10 a.m. Leave to appeal sought.

P.T. Today, Inc., and others brought an action in the Ingham Circuit Court against the Commissioner of the Office of Financial and Insurance Services. P.T. Today is a nonprofit corporation whose members are licensed independent physical therapists (IPTs) operating freestanding physical therapy clinics. The individual plaintiffs are members of P.T. Today. The action sought a writ of mandamus to compel the commissioner to take regulatory action against Blue Cross Blue Shield of Michigan (BCBSM) in connection with the commissioner's review of BCBSM's provider class plans (PCPs) for IPTs. The plaintiffs also sought declaratory relief pertaining to the commissioner's duties under the Nonprofit Health Care Corporation Reform Act, MCL 550.1101 et seq. The court, Thomas L. Brown, J., added BCBSM as a defendant upon the parties' stipulation. The plaintiffs amended their complaint to seek declaratory relief against BCBSM and damages from BCBSM for tortious interference with a business relationship or expectancy. The plaintiffs subsequently moved to have the Attorney General joined as a defendant to compel him to investigate the allegations against BCBSM. The court denied the motion, and eventually granted summary disposition for the defendants. The plaintiffs appealed. The Court of Appeals granted the Attorney General's motion to intervene on appeal.

The Court of Appeals held:

1. The trial court exercised sound discretion by declining to grant the plaintiffs declaratory relief. The plaintiffs alleged a contradiction between the commissioner's determination report concerning the review process of the PCP for IPTs and an independent hearing officer's order rejecting the PCP, but a subsequent appeal of that matter removed the basis of the controversy and rendered the plaintiffs' claim moot. The existence of an actual controversy is a condition precedent to declaratory relief under MCR 2.605(A). Despite the likelihood that the plaintiffs will

attempt to re-create the factual and legal situation meriting relief on the issue, the trial court's sound exercise of discretion is entitled to deference.

2. The plaintiffs failed to plead a prima facie case that the trial court's interpretation of the PCP review process denied them due process in the deprivation of a property interest. They have shown only a unilateral expectancy of business with BCBSM rather than a legally enforceable interest in a benefit to which they have a legitimate claim of entitlement. The plaintiffs have additional administrative remedies available.

3. The trial court did not abuse its discretion by denying the plaintiffs' requests for writs of mandamus against the commissioner to compel enforcement of the act. Mandamus may be used to require an officer charged with a duty to take action on that matter, but mandamus cannot be used to control the exercise of discretion or to review or revise the exercise of discretion. The commissioner fully complied with the duty under MCL 550.1603(4) to report to the Attorney General alleged fraudulent schemes by BCBSM. Furthermore, while the commissioner may, under the act, limit or revoke BCBSM's certificate of authority, this action is discretionary and not subject to mandamus.

4. The trial court did not abuse its discretion by denying the plaintiffs' motion to have the Attorney General joined as a defendant. The plaintiffs' proposed claims against the Attorney General would have failed as a matter of law. The Attorney General investigated some of BCBSM's activities that the plaintiffs alleged were fraudulent, and the plaintiffs failed to show that other activities were ongoing. Thus, no actual controversy existed for declaratory relief concerning the Attorney General's duties. While the plaintiffs intended to request a writ of mandamus compelling the Attorney General to initiate enforcement proceedings under the act, they failed to establish a clear legal duty for the Attorney General to act. Thus, joinder of the Attorney General was not essential to permit the court to render complete relief under MCR 2.205(A). Nor was permissive joinder justified under MCR 2.206(A) to promote the convenient administration of justice. For these reasons, the trial court also did not abuse its discretion in denying the plaintiffs leave to amend their complaint to add the Attorney General as a defendant because the amendment would have been futile.

5. The trial court abused its discretion by denying the plaintiffs leave to amend their complaint to add new allegations regarding the alleged fraud and to add new arguments concerning

their prior appeal of a related case, but the error was harmless. None of the proposed amendments would have averted summary disposition.

6. The trial court erred by dismissing plaintiffs' tortious interference claims against BCBSM on the grounds of res judicata. The plaintiffs' tortious interference claims in this case are premised on alleged conduct different than that alleged in the plaintiffs' tortious interference claims in an earlier case. The transactions are removed from one another in time, subject matter, and legal basis and would require different factual proofs. Thus, res judicata does not apply. Moreover, during the prior case, the plaintiffs were not privy to the information on which they now base their claims.

7. The trial court correctly granted summary disposition to BCBSM, however, on the grounds that the plaintiffs had no standing to bring a private cause of action against BCBSM under the act. Pursuant to MCL 550.1619, only the commissioner and the Attorney General may enforce the act directly against a health care corporation. By premising their claims on a violation of MCL 550.1408, the plaintiffs are in effect using a common-law cause of action as a vehicle to enforce the act.

8. Summary disposition was also proper because the plaintiffs' tortious interference claims failed for lack of causation. The business relationship or expectancy harmed by tortious interference must be a reasonably likely or probable expectancy. The plaintiffs failed to plead that BCBSM's alleged scheme damaged any business relationship or expectancy that had a reasonable likelihood of fruition.

9. By not citing the record or providing a transcript, the plaintiffs failed to preserve for appellate review their objections to the trial court's grant of a protective order for BCBSM executive officials.

Affirmed.

1. CONSTITUTIONAL LAW — PROCEDURAL DUE PROCESS — BUSINESS EXPECTANCIES.

Procedural due process safeguards apply to the deprivation of a property interest in a benefit to which a person has a legitimate claim of entitlement; an abstract need or desire for the benefit, or a unilateral expectation of it, is insufficient to establish a property interest in the benefit sufficient for procedural due process protections.

2. PLEADING — AMENDMENTS.

Amendment of a pleading is generally a matter of right rather than grace, and a motion to amend should ordinarily by denied only for

particularized reasons, including undue delay, bad faith or a dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility; the trial court must specify its reasons for denying leave to amend a pleading, and the failure to specify reasons for denying the motion to amend requires reversal unless the amendment would be futile; an amendment would be futile if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face, (2) it merely restates allegations already made, or (3) it adds a claim over which the court lacks jurisdiction (MCR 2.118[A]).

3. ACTIONS — PRIVATE CAUSES OF ACTION — NONPROFIT HEALTH CARE CORPO-
RATION REFORM ACT.

The Nonprofit Health Care Corporation Reform Act does not grant a health care provider the right to sue a health care corporation directly; only the Attorney General and the Commissioner of the Office of Financial and Insurance Services are entitled to act directly against a health care corporation under the act; a plaintiff may not use a common-law cause of action premised on a violation of the act by a health care corporation in an attempt to enforce the act privately (MCL 550.1619[2], [3]).

*Linda Fausey, P.C.* (by *Linda S. Fausey*), and *Sheldon Miller & Associates* (by *Sheldon Miller*) for P.T. Today, Inc.; and the individual plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *William A. Chenoweth*, Assistant Attorney General, for the Commissioner of the Office of Financial and Insurance Services.

*Dickinson Wright PLLC* (by *Joseph A. Fink, David C. Coey*, and *Jason J. Paupore*) for Blue Cross Blue Shield of Michigan.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Joseph E. Potchen* and *Ann M. Sherman*, Assistant Attorneys General, for the Attorney General.

Before: SMOLENSKI, P.J., and SCHUETTE and BORRELLO, JJ.

PER CURIAM. Plaintiffs appeal as of right the trial court's grant of summary disposition in favor of defendants in this case, which stems from their protracted challenges of administrative decisions by the Commissioner of the Office of Financial and Insurance Services and the Attorney General, as well as alleged tortious conduct by Blue Cross Blue Shield of Michigan (BCBSM). We affirm.

I. FACTS

A. OVERVIEW

Plaintiff P.T. Today, Inc., is a nonprofit corporation whose members, several of whom are individual plaintiffs, are licensed independent physical therapists; these individuals own and operate freestanding physical therapy clinics in Michigan. The Michigan Commissioner of the Office of Financial and Insurance Services (Commissioner)[1] is empowered to regulate BCBSM under 1980 PA 350, the Nonprofit Health Care Corporation Reform Act (the Act), MCL 550.1101 *et seq.*[2] BCBSM is a nonprofit, charitable health care corporation that operates pursuant to this act.

In this multicount action, plaintiffs sought (1) to compel the Commissioner to engage in several specific regulatory enforcement actions against BCBSM for creating and facilitating fraudulent business arrange-

[1] This litigation spans two administrations, two commissioners, and two attorneys general. However, neither the Commissioner's statutory duties nor the official policy of the Commissioner in regard to this litigation have changed over the duration of the suit.

[2] The statute is also referred to colloquially as "Act 350."

ments, (2) declaratory judgments delineating the Commissioner's enforcement duties under the Act, and (3) damages from BCBSM for its alleged tortious interference with a business interest through these fraudulent business arrangements. Additionally, plaintiffs sought to join the Attorney General as a party defendant for (1) a declaratory judgment that the Attorney General is required to engage in particular enforcement activities against BCBSM under the Act and (2) a writ of mandamus compelling the Attorney General to engage in these activities.

This case is but one of plaintiffs' challenges to the regulatory posture of the Commissioner and the business practices of BCBSM. Consequently, we summarize these related, yet distinctive, cases in part I(C) of this opinion, "Related Litigation." These cases often proceeded simultaneously; for the purposes of clarity, we discuss each case chronologically and note when the proceedings interacted. Additionally, this appeal concerns the intricacies of part 5 of BCBSM's enabling act, MCL 550.1501 *et seq*. As a result, we describe part 5 of the Act to aid in understanding the procedural history of this appeal in part I(B) of this opinion, "The Provider Class Plan Review Process." Finally, part I(D) of this opinion summarizes the procedural history of this case.

### B. THE PROVIDER CLASS PLAN REVIEW PROCESS

The Nonprofit Health Care Corporation Reform Act, MCL 550.1101 *et seq.*, provides for the comprehensive regulation of BCBSM, a charitable health insurance organization—as well as Michigan's largest provider of health insurance. Part 5 of the Act, MCL 550.1501 *et seq.*, controls how BCBSM reimburses health care providers (providers). MCL 550.1502 provides that BCBSM may create "provider class plans" (PCPs) that govern

its contracts with medical service providers of like kind.[3] BCBSM initiates the PCP approval process by preparing a proposed PCP, which must explain how it meets the goals outlined in MCL 550.1503 (uniform reporting by providers) and MCL 550.1504 (access, quality, and cost containment). The proposed PCP must also include the contracts that providers, like plaintiffs, would be required to sign under the PCP, as well as details regarding reimbursement arrangements under the proposed PCP. MCL 550.1506(1). Additionally, BCBSM must "establish and implement procedures to obtain advice and consultation from a provider class" when creating, modifying, or reviewing a PCP. MCL 550.1505. Finally, BCBSM may only file a plan at certain times.[4] MCL 550.1506.

MCL 550.1506(1) then requires BCBSM to submit the proposed PCP to the Commissioner for review. MCL 550.1506(2) provides that the Commissioner then conduct a limited review of the PCP, during which the Commissioner "shall examine the plan and shall determine *only* if the plan contains a reimbursement arrangement and objectives for each goal provided in [MCL 550.1504]." (Emphasis added.) If the Commissioner finds that BCBSM's proposed plan is incomplete, BCBSM must submit a revised PCP in 15 days. MCL 550.1506(3) and 550.1507. In other words, the Commissioner reviews the PCP for completeness, rather than for its ability to achieve the Act's goals for PCPs outlined in MCL 550.1504. BCBSM may modify a PCP placed in effect and "retained" for the Commissioner's records at any time, except for the 180-day period after

---

[3] Providers benefit from inclusion in a PCP because BCBSM refers its subscribers to class members and allows class members to use an official symbol to show subscribers that BCBSM reimburses them. MCL 550.1502(4) and (5).

[4] The details of this are unimportant to the instant case.

which the Commissioner declares a PCP "not retained" under MCL 550.1509. MCL 550.1508. The only preconditions to such an amendment are that it was prepared after consultation with affected providers and subscribers, MCL 550.1508(2), and that it "has been filed with and is agreed to by the commissioner," MCL 550.1508(1).

After a PCP has been in place for two years,[5] the Commissioner may review it for achievement of the PCP goals listed in MCL 550.1504. MCL 550.1509. When reviewing a PCP under MCL 550.1509, the Commissioner may consider annual reports by BCBSM; demographic, epidemiological, and long-term economic trends; sudden changes in circumstances; statutory changes; administrative and judicial decisions; changes in health care practices and technology; and comments from the affected provider group. MCL 550.1509(4). The Commissioner then evaluates whether the PCP meets the goals outlined in MCL 550.1504(1):

> (a) There will be an appropriate number of providers throughout this state to assure the availability of certificate-covered health care services to each subscriber.
>
> (b) Providers will meet and abide by reasonable standards of health care quality.
>
> (c) Providers will be subject to reimbursement arrangements that will assure a rate of change in the total corporation payment per member to each provider class that is not higher than the compound rate of inflation and real economic growth.

After building a record under MCL 550.1509 and considering the goals stated in MCL 550.1504(1), the Commissioner makes one of three rulings:

---

[5] For the purposes of MCL 550.1509, the filing of a modified PCP does not change the timing requirements. MCL 550.1508(2).

(1) that the PCP meets all the goals (thus retaining the PCP), MCL 550.1510(1)(a);

(2) that "although the provider class plan does not substantially achieve 1 or more of the goals of the corporation, a change in the provider class plan is not required because there has been competent, material, and substantial information obtained or submitted to support a determination that the failure to achieve 1 or more of the goals was reasonable . . ." (thus retaining the PCP), MCL 550.1510(1)(b); or

(3) that the PCP failed to meet the Act's goals (thus declaring the PCP "not retained"), MCL 550.1510(1)(c).

Subscribers (the insureds of BCBSM), BCBSM, the Attorney General, and organizations representing affected provider classes (such as P.T. Today) have the right to appeal certain determinations of the Commissioner, including determination reports issued pursuant to MCL 550.1509. MCL 550.1515. All appeals under part 5 are considered by an independent hearing officer (IHO).[6] MCL 550.1515(3) outlines the scope of the IHO's review of a determination report by the Commissioner:

> In an appeal pursuant to this section, the relief available to a person, and the decision of an independent hearing officer hearing an appeal, shall be limited to the following:
>
> (a) Affirming or reversing a determination of the commissioner under [MCL 550.1509(1)] and [MCL 550.1510(1)].
>
> (b) Determining, based on the information and factors described in [MCL 550.1509(4)] and the standards prescribed in [MCL 550.1516], 1 of the following:

---

[6] The IHO's qualifications are described in MCL 550.1514. "An appeal from an independent hearing officer shall be conducted pursuant to chapter 6 of the administrative procedures act, except that the appeal shall be taken within 30 days after the final determination, upon leave granted, in the court of appeals." MCL 550.1518.

(*i*) That the provider class plan prepared by the corporation under [MCL 550.1511(1)] was prepared in compliance with that section and shall be retained as provided in [MCL 550.1506(4)].

(*ii*) That the provider class plan prepared by the commissioner under [MCL 550.1513(2)(a)] was prepared in compliance with that section and shall be retained as provided in [MCL 550.1506(4)].

(*iii*) That a provider class plan described in subparagraph (*i*) or (*ii*) was not prepared in compliance with [MCL 550.1511(1)] or [MCL 550.1513(2)(a)], respectively, and shall not be retained as provided in [MCL 550.1506(4)]. In this case, the hearing officer shall order the corporation to prepare and submit a provider class plan as provided in subsection (4). Detailed findings must accompany the determination made by the hearing officer pursuant to this subdivision.

If the IHO reverses a determination report under MCL 550.1515(3)(b)(*iii*), BCBSM must submit an amended PCP within 180 days of the IHO's determination. MCL 550.1515(4). The IHO then evaluates this PCP to ensure that it "substantially achieves the goals of [BCBSM] as provided in [MCL 550.1504]." *Id*.

### C. RELATED LITIGATION

Plaintiffs' original displeasure with BCBSM arose from its practice of reimbursing freestanding, or "independent," physical therapy clinics (IPTs) at a lower rate than hospital-affiliated, or "outpatient," physical therapy clinics (OPTs). In 1996, plaintiffs sued BCBSM in the Wayne Circuit Court, challenging BCBSM's 1994 rehabilitation therapy PCP (RTPCP)[7] and seeking (1) a declaratory judgment that differential reimbursements violated the Act and (2) damages because these differ-

---

[7] This PCP applied to IPTs only. OPTs operated under a different PCP that reimbursed them at higher levels.

ential reimbursement rates constituted a tortious interference with plaintiffs' business interests. The trial court granted summary disposition in favor of BCBSM. In the same month, plaintiffs also sued the Commissioner in the Ingham Circuit Court, seeking a declaratory judgment that the Commissioner was required by the Act to seek modification of the 1994 RTPCP and injunctive relief compelling the Commissioner to issue a cease and desist order against BCBSM for engaging in discriminatory reimbursement practices.[8] The trial court granted summary disposition in favor of the Commissioner because the Act "contained no provision imposing on the Commissioner a duty to order that BCBSM immediately cease and desist its allegedly discriminatory conduct, and . . . while plaintiffs previously had sought the Commissioner's review of BCBSM's Rehabilitation Therapy provider class plan the requested view was premature" for failure to exhaust administrative remedies. See *PT Today, Inc v Blue Cross & Blue Shield of Michigan*, unpublished opinion per curiam of the Court of Appeals, issued July 20, 2001 (Docket Nos. 211294, 211309, and 215795), slip op at 4 (*PT Today I*). Plaintiffs appealed both decisions to this Court, which consolidated the appeals in *PT Today I*. While this Court considered plaintiffs' appeals, plaintiffs claimed to have discovered that BCBSM was engaging in fraudulent billing practices aimed at reducing plaintiffs' market share. Plaintiffs requested leave to supplement the record with evidence of "false claims" activities by BCBSM. This Court denied plaintiffs' first and second motions to supplement the record.

---

[8] The Attorney General had filed a related complaint against BCBSM in the Ingham Circuit Court. The trial court granted summary disposition in favor of BCBSM, and the Attorney General did not appeal.

This Court affirmed both circuit courts' grants of summary disposition in favor of defendants. The Court affirmed the Wayne Circuit Court's grant of summary disposition in favor of BCBSM because health care providers do not have standing to sue BCBSM directly for alleged violations of the Act. *Id.* It likewise affirmed the Wayne Circuit Court's grant of summary disposition in favor of BCBSM on plaintiffs' action for tortious interference with a business interest because plaintiffs "failed to demonstrate that BCBSM improperly intended any interference" or that BCBSM's conduct was "improper, that is illegal, unethical, or fraudulent . . . ." *Id.* at 5. The Court then affirmed the Ingham Circuit Court's decision because plaintiffs had failed to exhaust their administrative remedies under the part 5 PCP review process. *Id.* at 6-7, citing *Genesis Ctr, PLC v Financial & Ins Services Comm'r*, 246 Mich App 531; 633 NW2d 834 (2001). Finally, this Court ruled that " 'the commissioner had no clear legal duty under the [Act] to issue a cease and desist order and because the statutory review proceedings present an alternate and adequate remedy.' " *PT Today I, supra,* slip op at 8, quoting *Genesis Ctr, supra* at 546.

While *PT Today I* was playing out, plaintiffs sought administrative relief through the part 5 PCP review process. In 1997, BCBSM filed a new rehabilitation therapy PCP (the 1997 PCP), which again reimbursed IPTs at a lower rate than OPTs.[9] In accord with the Commissioner's limited power of initial review under MCL 550.1506(2), the Commissioner retained the PCP. Upon request by plaintiffs and a related IPT organization, the Commissioner evaluated the PCP under MCL 550.1509. The Commissioner's determination report

---

[9] The parties refer to the separate PCP for OPTs as the "Physical Therapy PCP."

concluded that "BCBSM 'generally met' the access goal" and "did not meet the quality of care and cost goals, but [this] failure was reasonable." *Michigan Physical Therapy Ass'n, Inc v Ins Comm'r*, unpublished opinion per curiam of the Court of Appeals, issued April 23, 2003 (Docket Nos. 230016 and 230017), slip op at 3 (*PT Today II*). Plaintiffs then appealed to the IHO under MCL 550.1515.

During one of the hearings before the IHO, BCBSM gave the Commissioner and plaintiffs a copy of a proposed modified PCP for IPTs; BCBSM claims that this modified PCP was drafted to address some of the Commissioner's concerns in a July 1999 determination and order.[10] BCBSM required many IPTs to accept the new provider agreement that accompanied the modified PCP. Plaintiffs protested these changes, arguing that BCBSM was forcing them to work under terms that violated the IHO's order. The Commissioner and the Attorney General did not stop BCBSM's renegotiation of these agreements.

In August 2000, the IHO reversed the Commissioner's determination and order, concluding that the 1997 PCP failed to meet the Act's goals and therefore should "not be retained." In particular, the IHO found that the PCP did not meet the statutory goals concerning costs, quality, and access because it favored higher-priced OPTs and reduced quality of care by restricting convenient access in the 29 Michigan counties without OPTs. Additionally, the IHO found that the four- to eightfold reimbursement disparity between IPTs and OPTs was

---

[10] All parties agree that this modified PCP did not end the PCP review process or address plaintiffs' concerns regarding differential reimbursement to IPTs and OPTs. Additionally, the modified PCP included provider agreements that required IPTs to earn Medicare certification, which plaintiffs claim was no longer required under Medicare.

unlawfully discriminatory. Consequently, the IHO ordered BCBSM to prepare a remedial PCP to comply with his order within 180 days. The Commissioner appealed to this Court. Shortly thereafter, plaintiffs filed a separate suit in the Ingham Circuit Court, which is the instant case and which will be discussed at length in part I(D) of this opinion. In the meantime, this Court stayed the IHO's order. In April 2003, this Court vacated the IHO's order in *PT Today II*. It reversed the IHO's determination and order on two grounds. First, it ruled that the IHO had exceeded his scope of review when he found that the Commissioner's " 'determination order must be reversed because the provider class plan was not prepared in compliance with the act.' " *PT Today II, supra,* slip op at 4. Rather, the Court, concluded, "the IHO's authority in this case is limited to reviewing the [Commissioner's] determination report regarding the relevant statutory goals." *Id.* Second, this Court found that the IHO had misinterpreted the scope of the Commissioner's review of a PCP under MCL 550.1509 and had failed to accord the Commissioner's determination report proper deference.[11] *Id.* at 6-7.

### D. THE INSTANT CASE

In January 2001, plaintiffs filed a voluminous complaint against the Commissioner in the Ingham Circuit

---

[11] The Court stated:

> The [Commissioner's] determination should not be disturbed unless it is clearly wrong. However, despite the IHO's reference to this standard, we conclude that his opinion does nothing to show that the [Commissioner's] analysis regarding the statutory goals was clearly wrong, but merely indicates that the [Commissioner] did not consider any impact of the differential in payment between hospital and non-hospital physical therapy providers. . . . In essence the IHO substituted his fact finding in derogation of the [Commissioner's] expertise. [*PT Today II, supra,* slip op at 7.]

Court. While plaintiffs requested various forms of relief and alleged many individual violations of the Act, the gravamina of the complaints were that (1) the Commissioner wrongfully acquiesced to the 2000 modified PCP and (2) the Commissioner was derelict in not acting on alleged violations of the Act by BCBSM.

Plaintiffs alleged that BCBSM and the Commissioner had circumvented the part 5 PCP review process and thereby rendered plaintiffs' victory before the IHO meaningless. Plaintiffs claimed that BCBSM's 2000 modified PCP contained provisions that the IHO explicitly found to be contrary to the Act's goals and contended that, if BCBSM is able to file a "modified" PCP that is essentially the same as the one a provider group challenges under MCL 550.1515, BCBSM could perpetually avoid an adverse judgment. This, they claimed, vitiated the part 5 review process, violated the Act, and infringed on plaintiffs' due process rights.

Plaintiffs further alleged that BCBSM encouraged and created fraudulent reimbursement schemes in which IPTs were classified as OPTs so that BCBSM could give "bonus" reimbursements to hospitals that were in fact unaffiliated with the IPTs. Further, they posited, the Commissioner wrongfully ignored evidence plaintiffs presented regarding these crimes. Plaintiffs reasoned that, as a monopoly, BCBSM had an incentive to pay these "bonus" reimbursements because higher costs translate into higher revenues for monopolies. Additionally, plaintiffs claimed that BCBSM favored hospital-centered care and therefore wanted to remove IPTs from the market; these schemes supposedly furthered that goal. Plaintiffs sought declaratory and injunctive relief for both of these grievances.

Six months into the litigation, the trial court joined BCBSM as a defendant by stipulation of plaintiffs and

the Commissioner. Plaintiffs filed a second amended complaint that added requests for a declaratory judgment and damages from BCBSM for tortious interference. For eight months, the lawsuit was at a standstill as BCBSM made two failed interlocutory appeals and the parties stayed proceedings while they awaited rulings from this Court in *PT Today II*.

In April 2003, this Court issued the opinion in *PT Today II*. As discussed in part I(C) of this opinion, this Court vacated the IHO's order, which meant that the 1997 PCP was again "retained." In July 2004, plaintiffs moved to join the Attorney General to compel him to investigate BCBSM's alleged conduct, and requested leave to file a third amended complaint adding their complaints against the Attorney General and addressing this Court's ruling in *PT Today II*. The trial court denied plaintiffs' motions because the amended complaint requested the same relief and added only futile claims against the Attorney General. In November 2004, 35 months after the initiation of the lawsuit, the trial court granted summary disposition in favor of the Commissioner and BCBSM for numerous reasons identified in part III of this opinion. We now consider plaintiffs' appeal.

## II. STANDARD OF REVIEW

A trial court's decision granting summary disposition is reviewed de novo to determine whether the prevailing party was entitled to judgment as a matter of law. *Allen v Keating*, 205 Mich App 560, 562; 517 NW2d 830 (1994). When reviewing a motion under MCR 2.116(C)(10), the court must examine the documentary evidence presented below and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Quinto*

*v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). A question of fact exists when reasonable minds could differ regarding the conclusions to be drawn from the evidence. *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379, 398-399; 491 NW2d 208 (1992).

Questions of statutory interpretation are also reviewed de novo. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are likewise reviewed de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

### III. ANALYSIS

#### A. MOOTNESS

Plaintiffs appeal the denial of declaratory relief (which included a declaration that the Commissioner's implementation of the PCP review process violated both the Act and plaintiffs' constitutional right to procedural due process) for the reason that their claim was moot. In *PT Today II*, this Court vacated the IHO's order invalidating the 1997 PCP with which the 2000 modified PCP allegedly conflicts. We conclude that the elimination of any contradiction between the Commissioner's determination report and the IHO's order removed the basis of the controversy on which plaintiffs sought declaratory judgment. Consequently, the trial court exercised sound discretion in declining to grant declaratory relief to plaintiffs.

MCR 2.605 governs declaratory judgments. The language of MCR 2.605 is permissive rather than mandatory; thus, it rests with the sound discretion of the court whether to grant declaratory relief. *City of Lake Angelus*

*v Aeronautics Comm*, 260 Mich App 371, 377 n 7; 676 NW2d 642 (2004). MCR 2.605(A) empowers a circuit court to issue a declaratory judgment in "a case of actual controversy . . . ."[12] The existence of an "actual controversy" is a condition precedent to the invocation of declaratory relief. *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 54-55; 620 NW2d 546 (2000). As such, a court may not "decide moot questions in the guise of giving declaratory relief," *Dep't of Social Services v Emmanuel Baptist Preschool*, 434 Mich 380, 470; 455 NW2d 1 (1990) (opinion by BOYLE, J.), because moot cases "present[] only abstract questions of law that do not rest upon existing facts or rights," *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). However, in the event the moot issue "is one of public significance that is likely to recur, yet evade judicial review," a court may then grant injunctive relief. *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002).

We conclude that this Court's decision in *PT Today II* eliminated the conflict on which plaintiffs based their request for declaratory judgment. Plaintiffs concede that the 2000 modified PCP does not conflict with the 1997 PCP, which again became "retained" when this Court vacated the IHO's order in *PT Today II*. Conse-

---

[12] MCR 2.605(A) provides, in relevant part:

(1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

(2) For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment.

quently, the question of the modified PCP's validity, as well as that of the PCP review process, is hypothetical; in order to reach a fact pattern similar to that which preceded this Court's ruling in *PT Today II*, the following must occur:

(1) Plaintiffs would have to challenge a retained PCP;

(2) the Commissioner would have to decide to retain the PCP;

(3) plaintiffs would have to appeal to an IHO;

(4) plaintiffs would have to win before the IHO;

(5) BCBSM would have to file a modified PCP that contradicted the IHO's order;

(6) the Commissioner would have to either choose to not act against the modified PCP or approve it;

(7) the Commissioner and BCBSM would both have to choose to not appeal their losses before the IHO, or one of the two would have to lose on appeal; and

(8) the Commissioner would have to leave the contradictory modified PCP in place.

These contingencies have not recurred and are unlikely to recur. For example, in light of past experience and the limited scope of review of the Commissioner and an IHO in the PCP review process, BCBSM's physical therapy PCP is highly unlikely to be ordered "not retained." Additionally, it seems unlikely that the Commissioner or BCBSM will delay as long as they did in the instant case before requesting a stay of an IHO's order. Importantly, their delay in requesting a stay allowed plaintiffs to complain that, in the interim between the IHO's order and the stay, BCBSM ignored the order and thus sidestepped the part 5 PCP review process.

This does not end our inquiry on the issue of declaratory relief. As noted above, a trial court may, in its

sound exercise of discretion, grant declaratory relief if the moot issue "is one of public significance that is likely to recur, yet evade judicial review." *Federated Publications, supra* at 112. Although no party raised the authority on appeal, we note that in *Lake Angelus*, this Court ruled that, while an individual opposing a local ordinance banning the use of seaplanes on a lake had not yet initiated the administrative process that might lead to the promulgation of an Aeronautics Commission rule overriding that ordinance, there was a sufficient case in controversy, given that a declaratory judgment adverse to the individual would avoid the need to engage in the lengthy and expensive administrative process. *Id.* at 376. The Court was willing to so rule in part because of this individual's perseverant challenge to the city's ordinance, which would seem similar to the persistence of plaintiffs in this case after even a brief survey of the trial record and voluminous related litigation. See *id.* However, in *Lake Angelus*, this Court affirmed the trial court's *grant* of a declaratory judgment as properly within its discretion, noting that MCR 2.605 indicates that a court "may" grant declaratory relief. *Id.* at 377 n 7. Under the deferential standard of review outlined in MCR 2.605, a reviewing court must affirm the trial court's decision even if a reasonable person might differ with the trial court in its decision to withhold relief. Thus, despite the likelihood that plaintiffs will attempt to re-create the factual and legal situation meriting legal relief on this issue, much like in *Lake Angelus*, we will not upset the trial court's sound exercise of discretion. *See* MCR 2.605; *Lake Angelus, supra* at 377 n 7.

## B. CONSTITUTIONAL DUE PROCESS VIOLATIONS

Plaintiffs next allege that the trial court interpreted the part 5 PCP review process in a manner that denied

them their constitutional rights to due process. We disagree. In addition to noting that these claims were mooted by this Court's decision in *PT Today II,* we conclude that plaintiffs failed to plead a prima facie case for denial of due process.

As discussed in part III(A) of this opinion, we conclude that any claim regarding BCBSM circumventing the IHO's order was mooted by *PT Today II.* As such, plaintiffs ask this Court to resolve a weighty constitutional question in the abstract, which the Supreme Court has cautioned against in *Council of Orgs & Others for Ed About Parochiaid, Inc v Governor* 455 Mich 557, 568; 566 NW2d 208 (1997).

Plaintiffs correctly note that the United States Supreme Court " 'consistently has held that some form of hearing is required before an individual is finally deprived of a property interest.' " *Dow v Michigan,* 396 Mich 192, 205 n 20; 240 NW2d 450 (1976), quoting *Mathews v Eldridge,* 424 US 319, 333; 96 S Ct 893; 47 L Ed 2d 18 (1976). For the purposes of a procedural due process analysis, the United States Supreme Court has turned to state law when determining whether a plaintiff holds a property interest:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. . . .
>
> *        *        *
>
> . . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. *He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.* It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide

> an opportunity for a person to vindicate those claims. [*Bd of Regents of State Colleges v Roth*, 408 US 564, 576-577; 92 S Ct 2701; 33 L Ed 2d 548 (1972) (emphasis added).]

If a court finds that a plaintiff was indeed deprived of property, it must then determine what process is due to him or her; to do so, the court considers (1) the private interest implicated, (2) the government interest implicated, and (3) the risk of error inherent in current procedures compared to the probability that alternative procedures would reduce error. See *Ingraham v Wright*, 430 US 651; 97 S Ct 1401; 51 L Ed 2d 711 (1977).

In this case, plaintiffs' purported property interests are the right to conduct business in the state of Michigan and, even vaguer, the right to an unspecified market share in the physical therapy market. Plaintiffs fail to show any legally enforceable interest based on their expectancies of business with BCBSM: they are based neither in contract nor statute. As such, they are mere "unilateral" expectancies, and therefore do not rise to the level of property interests for the purposes of a procedural due process analysis.[13] *Roth, supra* at 577. By stating in a conclusory fashion that they have a legally enforceable property interest, plaintiffs leave it

---

[13] The Act, if anything, provides for a relatively wide variability in how BCBSM's PCPs affect market share. The only "rights" afforded plaintiffs by part 5 of the Act are purely procedural. These include (1) the right to comment during the review of a PCP, MCL 550.1505 and 550.1509(4)(e); (2) the right to comment during the review of a modified PCP, MCL 550.1508(2); (3) the right to appeal the Commissioner's decision to retain or not retain a PCP, MCL 550.1515(1); and (4) the right to comment during the preparation of a PCP pursuant to an IHO's order, MCL 550.1515(4). Indeed, under MCL 550.1509(4)(e), no particular provider is even entitled to a review. Rather, BCBSM is merely required to consult with at least one organization representing the provider group. See MCL 550.1505(1). At the trial level, plaintiffs claimed that BCBSM failed to notify them of the modified PCP; however, plaintiffs abandoned this argument on appeal.

to this Court to discover and rationalize the basis for their claims. As such, they have abandoned the argument on appeal. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998).

Indeed, even if plaintiffs were able to establish that they were deprived of property by the Commissioner's actions, they likely would not establish that they were due any more process than is currently available under the Act. In fact, plaintiffs still have additional remedies beyond the appeal of the 1997 PCP. For example, they may still challenge the 2000 modified PCP, during which challenge there would be an evidentiary and hearing process as outlined in the Act. That said, plaintiffs abandoned this element of the procedural due process analysis entirely. Plaintiffs' briefs and pleadings never weighed the competing interests of the providers, BCBSM, and the Commissioner in their challenge to the Commissioner's interpretation of the PCP review process. Again, the appellants have merely announced their position and have left it to this Court to discover and rationalize the basis for their claims. Therefore we consider this element of their appeal abandoned. *Wilson, supra* at 243.

### C. MANDAMUS AGAINST THE COMMISSIONER

Plaintiffs next claim that the trial court erred in granting summary disposition in favor of the Commissioner in relation to plaintiffs' prayer for a writ of mandamus when plaintiffs submitted affidavits alleging that (1) BCBSM participated in false claims activities, (2) that these activities had ended, and (3) that the Commissioner, after reviewing plaintiffs' complaints, chose not to engage in such enforcement actions. We disagree.

A trial court's decision whether to issue a writ of mandamus is reviewed for an abuse of discretion, *Baraga Co v State Tax Comm*, 466 Mich 264, 268-269; 645 NW2d 13 (2002), but any underlying issue of statutory interpretation is a question of law, which is reviewed de novo on appeal,[14] *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999). Mandamus will not lie to control the exercise of discretion or for the purpose of reviewing, revising, or controlling the exercise of discretion of administrative bodies, but will lie to require a body or an officer charged with a duty to take action on the matter. *Lee v Macomb Co Bd of Comm'rs*, 235 Mich App 323, 332-333; 597 NW2d 545 (1999), rev'd on other grounds 464 Mich 726 (2001).

While plaintiffs do not precisely state under which provisions they seek mandamus against the Commissioner,[15] there are two candidates in part 6 of the Act under which the Commissioner may possibly be compelled to enforce the Act against BCBSM. First, MCL 550.1603(4) provides that "[i]f it appears . . . . that this act or any other law of this state has been violated, the commissioner immediately *shall* report the violation to the attorney general in writing." (Emphasis added.) Second, MCL 550.1605(1) provides:

> Upon due notice and an opportunity of evidentiary hearing pursuant to the administrative procedures act, the commissioner *may* suspend or limit the certificate of authority of a health care corporation if the commissioner determines that any of the following circumstances exist:

---

[14] Concluding that plaintiffs' challenge to the PCP review process is moot does not dispose of the instant issue. *PT Today II* did not concern plaintiffs' allegations of false claims activities by BCBSM, for which plaintiffs request a writ of mandamus requiring particular enforcement activities by the Commissioner and the Attorney General.

[15] The Court need not have located these statutes, because plaintiffs fail to cite proper authority on appeal. *Silver Creek Twp v Corso*, 246 Mich App 94, 99; 631 NW2d 346 (2001).

(a) The health corporation does not meet the requirements of this act respecting the adequacy of its reserves.

(b) The health care corporation is using methods or practices in the conduct of its business which render further transactions hazardous or injurious to subscribers of the corporation or the public.

(c) The health care corporation refuses or fails to comply with this act or with a lawful order of the commissioner. [Emphasis added.]

The Commissioner fully complied with MCL 550.1603(4) by reporting to the Attorney General in writing both alleged claims "schemes" identified by plaintiffs. Meanwhile, MCL 550.1605(1) indicates that the Commissioner *may* limit or revoke the certificate of authority for BCBSM. The plain language of the provision gives the Commissioner discretion; as such, a writ of mandamus will not lie. *Lee, supra* at 332-333. Indeed, this case illustrates precisely why a trial court should not grant mandamus to require a particular exercise of discretion: Plaintiffs asked the court to impose particular enforcement priorities, including staff allocations, on the Commissioner and the Attorney General. These decisions properly fall within the ambit of the political branches of government. Moreover, we agree with defendants that, at most, plaintiffs' evidence shows only that false claims activities occurred in the past, while defendants' evidence shows that any illegal activity has ended. As such, it is unclear what relief would be appropriate. We conclude that the trial court did not abuse its discretion in denying plaintiffs' requests for writs of mandamus and, therefore, should be affirmed.

### D. JOINDER OF THE ATTORNEY GENERAL

Plaintiffs next appeal as an abuse of discretion the trial court's denial of their motion to join the Attorney

General under MCR 2.205 or 2.206. If the Attorney General had been joined, plaintiffs would have sought a declaratory judgment and a writ of mandamus against the Attorney General, both compelling the Attorney General to engage in particular enforcement actions against BCBSM. We disagree, concluding that all of plaintiffs' proposed claims against the Attorney General fail as a matter of law and, as such, joining the Attorney General would neither have permitted the court to render complete relief nor promoted the convenient administration of justice.

This court reviews a trial court's rulings on joinder for an abuse of discretion. *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 95; 535 NW2d 529 (1995). An abuse of discretion exists when the court's decision is so violative of fact and logic as to constitute a perversity of will or a defiance of judgment. *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 647; 591 NW2d 393 (1998). Trial courts must consider the following when ruling on a party's motion for compulsive joinder:

> MCR 2.205(A) states that joinder is required of all parties "having such interests in the subject matter of an action that their presence in the action is *essential* to permit the court to render complete relief" (emphasis added). As this Court found in *Troutman v Ollis*, 134 Mich App 332, 339-340; 351 NW2d 301 (1984), where a party's presence in the action is not essential to the court rendering complete relief, factors such as judicial economy or avoidance of multiple litigation are not enough to compel joinder. [*Hofmann, supra* at 96.]

On the other hand, MCR 2.206(A)(2) provides:

> All persons *may* be joined in one action as defendants
>
> (a) if there is asserted against them jointly, severally, or in the alternative, a right to relief in respect of or arising out of the same transaction, occurrence, or series of trans-

actions or occurrences and if a question of law or fact common to all of the defendants will arise in the action; or

(b) if their presence in the action will promote the convenient administration of justice. [Emphasis added.]

### 1. COMPULSORY JOINDER

In regard to plaintiffs' attempt to join the Attorney General as a necessary party, we conclude that the trial court did not abuse its discretion because the Attorney General's presence was not "essential to permit the court to render complete relief . . . ." MCR 2.205(A). Plaintiffs emphasize that the Attorney General may engage in enforcement actions against BCBSM pursuant to MCL 550.1603(4), as well as compel BCBSM to comply with the Act through an ex parte order from the Ingham Circuit Court under MCL 550.1603(5). However, the trial court need not have joined the Attorney General to reach plaintiffs' desideratum: the end of the alleged false claims activities. In the absence of the Attorney General, the trial court could have issued a declaratory judgment that stated that BCBSM was engaging in ongoing violations of MCL 550.1408, which prohibits false claims activities. If the trial court had issued such a judgment, the Commissioner might have considered penalizing BCBSM pursuant to MCL 550.1605. Also, without joining the Attorney General, the trial court could have compelled the Commissioner to consider plaintiffs' allegations of false claims activities by BCBSM (if the Commissioner had not already fulfilled this duty pursuant to MCL 550.1603). Finally, as discussed below, plaintiffs' requests for mandamus against the Attorney General would have failed as a matter of law; consequently, joining the Attorney General would have granted plaintiffs no additional relief. In summary, adding the Attorney General was not

"*essential* to permit the court to render complete relief . . . ." MCR 2.205 (emphasis added).

### 2. PERMISSIVE JOINDER

In regard to plaintiffs' attempt to permissively join the Attorney General under MCR 2.206, we conclude that the trial court did not abuse its discretion because plaintiffs' requests for a writ of mandamus and declaratory relief against the Attorney General fail as a matter of law. MCR 2.206(A)(2)(b).

### a. WRIT OF MANDAMUS

Plaintiffs' request for mandamus would have this Court control the exercise or direction of the Attorney General's discretion. As such, an action for mandamus against the Attorney General would not lie. *Lee, supra* at 332-333; *In re MCI Telecom Complaint, supra* at 442-443. Consequently, this potential cause of action does not justify permissive joinder. MCR 2.206(A)(2). The Attorney General has two sources of authority to enforce the Act. First, the Attorney General may seek an order compelling BCBSM to comply with the Act:

> Upon the request of the commissioner, the attorney general *may* petition for, and the circuit court may issue, an ex parte order from the circuit court directing a corporation to comply with this section. [MCL 550.1603(5) (emphasis added).]

Second, the Attorney General may seek civil or criminal enforcement of the Act against any person:

> If it appears . . . . that this act or any other law of this state has been violated, the commissioner immediately shall report the violation to the attorney general . . . . The attorney general shall then take action on the alleged violation, *as the facts warrant.* [MCL 550.1603(4) (emphasis added).]

While MCL 550.1603(4) and (5) arguably require the
Attorney General to at least consider allegations
brought to him or her, defendants offer unchallenged
evidence that the Commissioner and the Attorney Gen-
eral indeed considered all of plaintiffs' allegations.
Pursuant to MCL 550.1603(4), the Commissioner re-
ferred plaintiffs' allegations regarding the false claims
at Kern Hospital to the Attorney General. The Chief
Deputy Attorney General performed at least a perfunc-
tory investigation by demanding a written response
from BCBSM "explaining the past and present relation-
ship between BCBSM and Kern Hospital and the details
of any settlement or other resolution between BCBSM
and Kern Hospital involving these allegations." BCBSM
responded, saying that, after discovering through its
internal audit process that it had overpaid Kern Hospi-
tal by over $3 million, it exacted a settlement of about
$1.8 million before Kern Hospital was sold in October
2003. The Health Care Fraud Division of the Attorney
General's office also communicated with the United
States Attorney's office in Detroit for further investiga-
tion. When the United States Attorney's office informed
the Attorney General that it was already investigating
the matter, the Attorney General chose to not initiate
an overlapping investigation. The Attorney General
later informed the Commissioner and plaintiffs that, on
the basis of its investigations and communications with
the United States Attorney's office, there was "insuffi-
cient basis to pursue criminal charges arising out of the
allegations referred to us by [the Office of Financial and
Insurance Services]." The foregoing shows that the
Attorney General investigated the Kern Hospital
scheme, thus fulfilling any duty under the Act to
consider plaintiffs' referrals. In regards to the alleged
"Grand Rapids schemes," BCBSM offered an affidavit
from its plan administrator, testifying that BCBSM had

revoked the provider numbers of the physical therapists who were allegedly mischaracterizing their provider status in Grand Rapids. Plaintiffs' affidavits do not controvert this testimony; instead, they assert that false claims activities occurred in the past and that BCBSM was sending improper reimbursements to one affiant, apparently to harass her into silence. As such, plaintiffs fail to show that there is any ongoing activity in Grand Rapids that the Attorney General could stop.

Plaintiffs also requested a writ of mandamus compelling the Attorney General to initiate enforcement proceedings against BCBSM and the perpetrators of the false claims activities it discovered. However, they fail to establish that the Attorney General had a "clear legal duty" to engage in these specific enforcement actions pursuant to *In re MCI Telecom Complaint, supra* at 442-443. As discussed above, MCL 550.1603(5) indicates that the Attorney General "may" seek an ex parte order from the Ingham Circuit Court, and MCL 550.1603(4) indicates that the Attorney General "shall" pursue other actions "as the facts warrant." Instead of asking that the Attorney General investigate violations of Michigan law, plaintiffs asked the trial court to force the Attorney General to adopt plaintiffs' enforcement priorities and to engage in specific enforcement actions against BCBSM. While a reasonable person could disagree with the Attorney General's enforcement priorities and evaluation of plaintiffs' complaints, the mandamus standard is not a vehicle for a court to put itself in a government official's shoes. *Lee, supra* at 332-333. Rather, a trial court must decline to issue a writ of mandamus to compel a particular exercise of discretion. Consequently, plaintiffs' request for mandamus would not afford them additional relief and therefore would

not justify joinder of the Attorney General to "promote the convenient administration of justice." MCR 2.206(A)(2)(b).

### b. DECLARATORY JUDGMENT

Plaintiffs also seek to join the Attorney General so they may request a declaratory judgment that the Attorney General must pursue enforcement actions against BCBSM and its coconspirators in the Kern Hospital and Grand Rapids schemes. We conclude that the cessation of the false claims activities in both of the schemes alleged by plaintiffs likewise ended any "actual controversy." Without an "actual controversy," the trial court lacked jurisdiction to consider plaintiffs' request for declaratory relief. Plaintiffs' request for declaratory relief would not have afforded them additional relief and therefore did not justify joinder of the Attorney General to "promote the convenient administration of justice." MCR 2.206(A)(2)(b).

MCR 2.605(A)(1) empowers the circuit court to issue a declaratory judgment in "a case of actual controversy . . . ." The existence of an actual controversy is a condition precedent to invocation of declaratory relief. *Citizens for Common Sense in Gov't, supra* at 54-55. An actual controversy exists

> where a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiffs' legal rights. "[W]hat is essential to an 'actual controversy' under the declaratory judgment rule is that plaintiff plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised." Generally, where the injury sought to be prevented is merely hypothetical, a case of actual controversy does not exist. [*Id.* at 55 (citations omitted).]

Moreover, the language of MCR 2.605 is permissive rather than mandatory; thus, it rests with the sound discretion of the court whether to grant declaratory relief. *Lake Angelus, supra* at 377 n 7.

Plaintiffs' request for declaratory relief fails under each of the factors listed above. *Citizens for Common Sense in Gov't, supra* at 55. First, plaintiffs failed to show how a declaratory judgment in their favor in regard to the Attorney General's duties under part 6 of the Act would "guide [their] future conduct." *Id.* Plaintiffs' only recourse under the Act against false claims is to refer their allegations to the Commissioner and the Attorney General; there is no viable alternative course to preserve their rights. See MCL 550.1603. Second, plaintiffs have not shown that they have any right to a particular share of the rehabilitation therapy market or BCBSM's physical therapy business, and thus they do not have " 'an adverse interest necessitating a sharpening of the issues raised.' " *Citizens for Common Sense in Government, supra* at 55 (citation omitted). Third, BCBSM's uncontroverted evidence of the cessation of false claims activities renders injuries to plaintiffs' business expectancies "merely hypothetical." *Id.* We therefore affirm the trial court's order denying compulsory and permissive joinder of the Attorney General as a defendant.

### E. AMENDMENT OF PLAINTIFFS' COMPLAINT

Plaintiffs allege that the trial court abused its discretion in denying them leave to file a third amended complaint that (1) added the Attorney General as a party for the purposes of seeking declaratory relief and a writ of mandamus compelling the Attorney General to engage in particular enforcement activities, (2) added new factual allegations regarding the Kern Hospital

scheme, and (3) added new arguments interpreting this Court's ruling in *PT Today II* as it related to plaintiffs' challenge to the Commissioner's interpretation of the part 5 PCP review process. We conclude that the trial court exercised sound discretion in denying plaintiffs leave to file their third amended complaint in regard to the Attorney General because such an amendment would have been futile. We further conclude that, while the trial court erred in denying plaintiffs leave to file a more limited amendment that addresses this Court's decision in *PT Today II* and newly discovered information about the Kern Hospital scheme, any abuse of discretion by the trial court on this matter constituted harmless error because nothing in the amended complaint would have averted summary disposition.

The grant or denial of leave to amend pleadings is within the trial court's discretion. *Weymers v Khera,* 454 Mich 639, 654; 563 NW2d 647 (1997). But that discretion is not boundless; the trial court must make findings regarding whether justice is served by the amendment. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 658; 213 NW2d 134 (1973); *Terhaar v Hoekwater,* 182 Mich App 747, 751; 452 NW2d 905 (1990). This Court will not reverse a trial court's decision regarding leave to amend unless it constituted an abuse of discretion that resulted in injustice. See *Cassibo v Bodwin,* 149 Mich App 474, 477; 386 NW2d 559 (1986). An abuse of discretion exists if the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Franchino v Franchino,* 263 Mich App 172, 193; 687 NW2d 620 (2004). There is no injustice if the proceedings would have reached the same result if the trial court had not denied a party leave to amend its pleadings. *Cassibo, supra* at 477.

The rules pertaining to the amendment of pleadings[16] are designed to facilitate amendment except when prejudice to the opposing party would result; amendment is generally a matter of right rather than grace. *Ben P Fyke, supra* at 659. Thus, a motion to amend should ordinarily be denied only for particularized reasons, including undue delay, bad faith or a dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility. *Weymers, supra* at 658; *Franchino, supra* at 189-190. The trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile. See *Franchino, supra* at 190.

The trial court denied plaintiffs leave to amend their complaint because their amendments would be futile. An amendment would be futile if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face, *Hakari v Ski Brule, Inc,* 230 Mich App 352, 355; 584 NW2d 345 (1998); (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction, *Lane v KinderCare Learning Centers, Inc,* 231 Mich App 689, 697; 588 NW2d 715 (1998). In this case, plaintiffs' proposed claims against the Attorney General constituted the larger share of the amendments in their proposed third amended complaint. These complaints would have failed as a matter of law, as discussed in part III(D) of this opinion. Consequently, these amendments were " 'legally insufficient on [their] face' " and did not justify amendment. *Hakari, supra* at 355, quoting *Gonyea v Motor Parts Fed Credit Union,* 192 Mich App 74, 78; 480 NW2d 297 (1991).

---

[16] See MCR 2.118(A).

Plaintiffs' proposed third amended complaint also included new pleadings regarding this Court's decision in *PT Today II* as it related to their procedural due process claim against the Commissioner, as well as additional facts to bolster their claims regarding the false claims activities. MCR 2.118(E) provides that the court may, "on reasonable notice and on just terms, permit the party to serve a supplemental pleading to state transactions or events that have happened since the date of the pleading sought to be supplemented . . . ." In this case, all parties anticipated changes related to the development of the *PT Today II* suit, and insofar as the amendments related to developments in that suit, the trial court should have granted leave to amend.[17] MCR 2.118(E). Moreover, neither defendant was prejudiced by the amendments to plaintiffs' pleadings in regards to *PT Today II* and the PCP review process, given that they sought repeated stays pending this Court's decision—over plaintiffs' objections. As such, the trial court abused its discretion in denying plaintiffs leave to amend their complaint to reflect this Court's decision in *PT Today II*.

However, this abuse of discretion did not constitute error requiring reversal because nothing in the proposed amendments would have averted summary disposition, which the trial court granted but one month later. See *Cassibo, supra* at 477. The trial court granted summary disposition in favor of the Commissioner on plaintiffs' request for mandamus because, as a matter of law, the trial court could not compel the Commis-

---

[17] While it does not appear to be the case from the trial record, we note that a trial court may not let its view of the merits of the case affect its decision to grant or deny leave for amendment of the pleadings. *Commodities Export Co v Detroit*, 116 Mich App 57, 71; 321 NW2d 842 (1982).

sioner to exercise discretion in a particular way, as plaintiffs desired. It ruled in favor of the Commissioner on plaintiffs' requests for declaratory judgment because *PT Today II* mooted plaintiffs' procedural due process claims. Plaintiffs' proposed amendments merely acknowledged this Court's decision in *PT Today II* and argued that plaintiffs still had a valid procedural due process claim. Even if the trial court had granted plaintiffs leave to file these amendments, the trial court would have granted summary disposition in favor of the Commissioner on plaintiffs' request for declaratory relief because plaintiffs' pleadings failed to show that their claim was not moot. *Id.* In conclusion, we note that the trial court erred in denying amendments to plaintiffs' complaint, but affirm because the trial court's failure was harmless error.

### F. RES JUDICATA AND PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS

Plaintiffs next appeal the trial court's order granting summary disposition in favor of BCBSM on plaintiffs' claims of tortious interference with a business interest. We conclude that the trial court erred in granting summary disposition based on the theory of res judicata because plaintiffs' claims of tortious interference in *PT Today I* were premised on BCBSM's differential reimbursement scheme, whereas plaintiffs' claims of tortious interference in the instant case are premised on fraudulent billing activities, which were not part of the same transaction or occurrence. Additionally, the doctrine of res judicata does not apply to this case because, after exercising due diligence in trying to add the false claims tortious interference count to *PT Today I*, plaintiffs were not allowed to do so.

The applicability of res judicata is a question of law that is reviewed de novo. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999). A party's claim is barred by the doctrine of res judicata when (1) the prior action was decided on the merits, (2) the decree in the prior action was a final decision, (3) the matter contested in the second case was or could have been resolved in the first, and (4) both actions involved the same parties or their privies. See *Baraga Co, supra* at 269; *Adair v Michigan,* 470 Mich 105, 121; 680 NW2d 386 (2004).

In this case, plaintiffs correctly argue that, while their causes of action have the same name in *PT Today I* and the instant case, they have distinct factual bases. Plaintiffs' tortious interference claims in *PT Today I* were based on BCBSM's differential reimbursement of hospital physical therapists and independent physical therapists. In the instant case, however, plaintiffs argue that BCBSM is violating its own reimbursement scheme under the 1997 PCP and the 2000 modified PCP, as well as MCL 550.1408.[18] These transactions and occurrences are removed from each other in time, subject matter, and legal basis. Moreover, they require different factual proofs. In *PT Today I*, plaintiffs would have to have proved that the PCP was discriminatory, that the Act proscribed discriminatory reimbursements, and that this discrimination reduced plaintiffs' market share; in the instant case, plaintiffs must prove that BCBSM knowingly promoted the mischaracterization of claims, that this mischaracterization was unlawful, and that this mischaracterization reduced plaintiffs' market share. If different facts or proofs would be required, res judicata does not apply; consequently, res

---

[18] Plaintiffs sometimes refer to this provision as the "False Claims Act."

judicata does not apply to the instant case. *VanDeventer v Michigan Nat'l Bank,* 172 Mich App 456, 464; 432 NW2d 338 (1988).

Additionally, plaintiffs convincingly argue that they were unable to litigate the instant tortious interference claims in *PT Today I.* Plaintiffs claim (without challenge from defendants) that they were not privy to the information on which they base the instant tortious interference claims until *PT Today I* was already on appeal. Plaintiffs diligently attempted to reopen the proceedings to introduce these new facts, but were barred from doing so by this Court. Consequently, plaintiffs' tortious interference claims that arise out of BCBSM's alleged false claims activities were neither actually litigated nor litigable after plaintiffs exercised reasonable diligence. Therefore, they should not have been barred by the doctrine of res judicata. *Adair, supra* at 121. Additionally, because these facts arose after *PT Today I* had reached this Court, plaintiffs' claims would likely also be saved from res judicata because they are changed facts or new facts. See *In re Pardee,* 190 Mich App 243, 248; 475 NW2d 870 (1991).

In conclusion, the trial court erred in dismissing plaintiffs' tortious interference claims on the basis of the doctrine of res judicata. However, as discussed in parts III(G) and (H) of this opinion, plaintiffs' victory on this issue fails to rescue their tortious interference claims. As such, we conclude that the trial court reached the right conclusion for the wrong reasons and should be affirmed. *Gleason v Dep't of Transportation,* 256 Mich App 1, 3; 662 NW2d 822 (2003).

### G. STANDING AND PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS

Plaintiffs appeal the trial court's order granting summary disposition in favor of BCBSM on the grounds

that plaintiffs had no standing to bring a private cause of action against BCBSM under the Act. We conclude that the trial court correctly granted summary disposition in light of this Court's interpretation of the Act in *BPS Clinical Laboratories v Blue Cross & Blue Shield of Michigan (On Remand),* 217 Mich App 687, 698; 552 NW2d 919 (1996).

This Court reviews rulings on motions for summary disposition de novo. *Maiden v Rozwood,* 461 Mich 109, 118; 597 NW2d 817 (1999). Statutory interpretation, as a question of law, is likewise reviewed de novo. *Adams v Linderman,* 244 Mich App 178, 184; 624 NW2d 776 (2000).

The trial court dismissed plaintiffs' claims of tortious interference with a business relationship. The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy by the interferer, (3) an intentional and wrongful interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy was disrupted. See *Badiee v Brighton Area Schools,* 265 Mich App 343, 365-366; 695 NW2d 521 (2005). In this case, plaintiffs sought to establish the third element of this cause of action, intentional and wrongful interference, with evidence that BCBSM violated MCL 550.1408.

However, in *BPS Clinical Laboratories,* this Court definitively stated that the Act "does not grant a health care provider the right to sue a health care corporation directly" and that "[o]nly the Attorney General and the Insurance Commissioner are entitled to enforce the act directly against a health care corporation," pursuant to

MCL 550.1619(2) and (3). *BPS Clinical Laboratories, supra* at 698. The Court described the preemptive effects of the Act in detail:

> The *only* private right of action directly against a health care corporation authorized by the act is an action by a subscriber against a health care corporation for damages. . . . Because this statute only explicitly allows a private right of action by a subscriber, we conclude that no other private rights of action directly against a health care corporation are authorized. See *Williams v Coleman,* 194 Mich App 606, 613; 488 NW2d 464 (1992). The relief sought by plaintiffs regarding the enforcement of Act 350 is available through the procedure set forth in MCL 550.1619(3) . . . . Plaintiffs may commence an action in the Ingham Circuit Court to compel the Insurance Commissioner to enforce the act. [*Id.* (emphasis added).]

MCL 550.1408 is part of the Act. By premising their claims on a violation of MCL 550.1408, plaintiffs are in effect using a common-law cause of action as a vehicle to enforce the Act. We have spoken definitively on this tactic: only subscribers and the Attorney General may sue BCBSM for violating the Act. To rule otherwise would damage the Act, which ensures uniform and streamlined regulation of BCBSM's PCPs.[19]

### H. CAUSATION AND PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS

Plaintiffs also appeal the trial court's grant of summary disposition on their claims of tortious interference

---

[19] Plaintiffs' argument regarding the single-object requirement for statutes is raised for the first time on appeal. "Since the issue currently discussed was neither pleaded, nor mentioned at pretrial, nor the subject of proper amendment at trial," we note that, "it may not be raised for the first time at final argument or on appeal." *Ewing v Heathcott,* 348 Mich 250, 255; 83 NW2d 210 (1957). Also, this argument indicates a failure by plaintiffs to notify the Court that they seek to invalidate a statute. MCR 7.212(C)(1).

with a business relationship or expectancy on the grounds that plaintiffs failed to show a harm or a causal connection between the allegedly illegal activities and their injuries. The trial court dismissed the claim under MCR 2.116(C)(10), under which summary disposition of all or part of a claim or defense may be granted when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." While the movant has the initial burden of showing that there are no disputed issues of material fact, MCR 2.116(G)(4), a nonmovant who would have the burden of proof at trial may not rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial, *Quinto, supra* at 362. The existence of a disputed fact must be established by admissible evidence, MCR 2.116(G)(6); a mere promise to offer factual support at trial is insufficient, *Maiden, supra* at 121.

We enumerated the elements of tortious interference with a business relationship or expectancy in part III(G) of this opinion. In regard to the harm suffered, plaintiffs must show that their business expectancy is a reasonably likely or probable expectancy. *First Pub Corp v Parfet*, 246 Mich App 182, 199; 631 NW2d 785 (2001), aff'd in part and vacated in part on other grounds 468 Mich 101 (2003). Plaintiffs state in a conclusory fashion that BCBSM has a significant effect on the physical therapy market and on federal funds available for health care, but they fail to plead that BCBSM's alleged schemes damaged any business relationship or expectancy that had a reasonable likelihood of fruition. *Id.* On appeal, plaintiffs offer to provide such proofs at trial, but this mere promise to offer factual support at trial is insufficient. *Maiden, supra* at 121. We

therefore affirm the trial court's grant of summary disposition because plaintiffs' tortious interference claim failed for lack of causation.

### I. PROTECTIVE ORDERS

Finally, plaintiffs argue that the trial court abused its discretion in granting BCBSM a protective order shielding its officers from being deposed when plaintiffs offered affidavits alleging that these officers played a direct role in orchestrating false claims schemes. We conclude that plaintiffs failed to preserve their objection for appellate review.

A trial court's decision whether to grant a protective order limiting discovery is reviewed for an abuse of discretion. See MCR 2.302(C)(1). MRE 103 aids this Court in evaluating whether a trial court's evidentiary rulings constitute an abuse of discretion:

> (a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> \* \* \*
>
> (2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
>
> \* \* \*
>
> (b) *Record of offer and ruling.* The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. It may direct the making of an offer in question and answer form.

For similar reasons, this Court will refuse to consider issues for which the appellant failed to produce the

transcript. *Myers v Jarnac,* 189 Mich App 436, 443-444; 474 NW2d 302 (1991); *People v Coons,* 158 Mich App 735, 740; 405 NW2d 153 (1987).

In this case, plaintiffs complain about the trial court's grant of a protective order for executive officials of BCBSM, but fail to cite the record or provide a transcript of the hearing regarding the protective order. The trial court's protective order states that the order was granted "for the reasons more fully set forth on the record . . . ." Without this transcript, this Court can determine neither the trial court's reasoning for granting the order nor whether plaintiffs made a persuasive offer of proof in accord with MRE 103. Moreover, in their brief on appeal, plaintiffs do not state how this affects "the substantial right of a party," as required by MRE 103; rather, they leave it to this Court to justify their characterization. *Wilson, supra* at 243. Finally, even if plaintiffs were to establish that the trial court abused its discretion in granting the protective order, their claims against BCBSM fail as a matter of law, as discussed above. Accordingly, we affirm the trial court's grant of a protective order.

### IV. CONCLUSION

In this exceedingly complex case, we affirm the trial court's grant of summary disposition in favor of defendants.