# STATE OF MICHIGAN

# COURT OF APPEALS

KATHY BEDAU,

        Plaintiff-Appellee,

v

CADILLAC AREA PUBLIC SCHOOLS,

        Defendant-Appellant,

and

CABERFAE SKIING COMPANY, doing business
as CABERFAE PEAKS SKI AND GOLF
RESORT, and SUN & SNOW SKI &
SNOWBOARD SHOP,

        Defendants.

UNPUBLISHED
May 24, 2018

No. 340895
Wexford Circuit Court
LC No. 2016-026963-NI

Before: METER, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

In this suit arising from injuries plaintiff suffered while skiing at the Caberfae Peaks Ski Resort, defendant Cadillac Area Public Schools[1] appeals as of right the trial court's denial of its motion for summary disposition, which was brought under MCR 2.116(C)(7) (governmental immunity) and (C)(8) (failure to state a claim), and the trial court's granting leave for plaintiff to amend her complaint to plead in avoidance of governmental immunity. We affirm.

## I. BASIC FACTS

On the evening of March 4, 2015, plaintiff was skiing with her husband at the Caberfae Peaks Ski Resort. Although plaintiff and her husband were not part of it, there was an adult ski race league racing at Caberfae that evening. The race league was run by defendant.

---

[1] Herein, our use of the term "defendant" in this opinion will refer to defendant Cadillac Area Public Schools because the other defendants are not part of this appeal.

-1-

The race had been set up along Caberfae's "Liberty" run, which required fencing near the finish area to keep non-participants clear of the area. After the racing was complete, the fencing was to be laid on the ground and "immediately" rolled up. However, on this evening, plaintiff alleges that on her final run of the evening, after the fencing had been taken down, she was crossing over the Liberty run to get to the only trail leaving the area, when she unexpectedly hit some fencing that was lying on the ground. The impact caused her to fall hard on her face, causing serious injuries.

Plaintiff filed the instant action, alleging negligence against defendant.[2] Defendant thereafter moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8) on the ground that dismissal was warranted because, as a governmental agency, "it cannot be sued for negligence." Specifically, defendant asserted that plaintiff's suit is deficient because she did not plead in avoidance of governmental immunity conferred by the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. Defendant also argued that allowing plaintiff to amend her claims to plead in avoidance of governmental immunity would be futile because there is no evidence to show that defendant was engaging in a proprietary function when it administered the adult ski race league. In support of this argument, defendant submitted the affidavit of Craig McCarthy, who is defendant's Director of Business and Operations. McCarthy averred, in pertinent part, that defendant "at no time . . . receive[d] or recognize[d] any income or profit related to the activities of the adult ski racing league."

In response, plaintiff argued that summary disposition was not appropriate because she produced evidence to show that defendant was engaging in a proprietary function when it ran the adult ski race league. Plaintiff noted that while defendant collected approximately $3,000 per season in league fees, defendant claimed that it had no record of where the monies went. Plaintiff also provided deposition testimony that showed that the two individuals whom defendant paid to organize the event were paid a total of $200 per year. Accordingly, plaintiff argued that she should be allowed to amend her complaint because, with defendant retaining the lion's share of the fees, she can show that defendant was engaging in a proprietary function, which means that amendment of her complaint would not be futile.

At the hearing on defendant's motion for summary disposition, the trial court denied the motion. The trial court relied on the fact that there was evidence submitted that defendant received approximately $3,000 in league fees, while there was evidence that it only paid out $200. Thus, with $2,800 unaccounted for, and defendant claiming it possessed no records of how the funds were actually spent, there was a question of fact as to whether defendant was engaging in a proprietary function. As a result, the trial court permitted plaintiff to amend her complaint to plead in avoidance of governmental immunity based on the proprietary-function exception. This appeal followed.

---

[2] Plaintiff's complaint stated claims against the other defendants as well, but as previously noted, these claims are not part of this appeal.

## II.  STANDARDS OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law. When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

A motion under MCR 2.116(C)(8), on the other hand, tests the legal sufficiency of the complaint. *Maiden*, 461 Mich at 119. This Court accepts all well-pleaded factual allegations as true and construes them in a light most favorable to the nonmovant. *Id.* A motion is properly granted under this subrule if the alleged claims are "so clearly unenforceable as a matter of law that no factual development could possibly justify recover." *Id.* (quotation marks and citation omitted).

We review a trial court's decision to allow a plaintiff to amend her complaint for an abuse of discretion. *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 142; 715 NW2d 398 (2006). Under MCR 2.118(A)(2), "[l]eave shall be freely given when justice so requires." However, a motion to amend may be denied for many reasons, including that the amendment would be futile or otherwise unjustified. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 216; 859 NW2d 238 (2014). And one of the reasons a claim can be futile is if it is legally insufficient on its face. *PT Today*, 270 Mich App at 143.

## III.  ANALYSIS

Defendant argues that the trial court erred when it denied defendant's motion for summary disposition and when it allowed plaintiff to amend her complaint. We disagree.

Under the GTLA, "governmental agencies" are immune from tort liability when they are "engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). There is no dispute that defendant is a governmental agency. See MCL 691.1401(a), (e). However, the GTLA also provides several exceptions to this broad grant of immunity. *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84; 746 NW2d 847 (2008).[3] The only exception that the parties argue

---

[3] "The six statutory exceptions are: the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-

is relevant to this appeal is the proprietary-function exception,[4] which is codified in MCL 691.1413 and provides in pertinent part the following:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees.

As this Court recently stated:

> The first prong of the proprietary function test has two relevant considerations. First, whether an activity actually generates a profit is not dispositive, but the existence of profit is relevant to the governmental agency's intent. Importantly, an agency may conduct an activity on a self-sustaining basis without being subject to the proprietary function exemption. Second, where the profit is deposited and where it is spent indicate intent. If profit is deposited in the general fund or used on unrelated events, the use indicates a pecuniary motive, but use to defray expenses of the activity indicates a nonpecuniary purpose. [*Goodhue v Dep't of Transp*, 319 Mich App 526, 532; 904 NW2d 203 (2017) (quotation marks, citations, and brackets omitted).]

Here, defendant submitted evidence in the form of an affidavit from McCarthy, which stated that defendant "at no time . . . receive[d] or recognize[d] any income or profit related to the activities of the adult ski racing league." If that were all the evidence before the trial court, then there would be no genuine issue of material fact that, with zero income or profit, defendant could not have been engaged in a proprietary function when it administered the adult ski race league. However, that is not all the evidence that was submitted. Plaintiff submitted a flyer, which advertised for the "Cadillac Community Schools Wednesday Night Adult Recreational

---

function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3)." *Wesche*, 480 Mich at 84 n 10.

[4] Notably, the parties have treated defendant as having been engaged in the exercise or discharge of a governmental function, thereby falling within the threshold requirement for immunity under the GTLA. Governmental function is defined by MCL 691.1401(b), in relevant part, as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." Although plaintiff stated in her brief opposing defendant's motion for summary disposition at the trial court that defendant was not engaged in the exercise of a governmental function, her argument was solely focused on whether defendant was engaging in a proprietary function. Consequently, the issue of whether defendant was engaged in an exercise of a governmental function is not before us and we decline to address it.

-4-

Ski Race League." On the flyer, it stated that each three-person team's $150 entry fee[5] was to be paid by check made payable to defendant. Further, there was testimony that there were approximately 20 teams each year that participated in the league. Thus, considering the evidence in a light most favorable to plaintiff, defendant received approximately $3,000 per year for running the league. Furthermore, the only evidence of any expenditures on defendant's behalf was that defendant paid two organizers $100 each to run the event for the year. Importantly, because there is no evidence to show how this remaining $2,800 was spent, when viewed in a light most favorable to plaintiff, one could conclude that defendant simply retained the money as profit and used it for purposes other than the adult ski race league.[6] This situation is distinguishable from *Goodhue,* in which this Court upheld a grant of summary disposition. In *Goodhue*, the evidence showed that money was used solely "for the operation of the Blue Water Bridge," and "the evidence conclusively show[ed] that because none of the money ended up in the state's general fund, defendant operate[ed] the Blue Water Bridge on a self-sustaining basis." *Goodhue*, 319 Mich App at 532-533. Because the Court held that the defendant was operating the Blue Water Bridge on a self-sustaining basis, it was not engaging in a proprietary function and summary disposition was warranted on the basis of governmental immunity. *Id*. at 534.

Here, by contrast, there is a question of fact of whether defendant's participation in conducting the adult ski race league was primarily for the purpose of producing a pecuniary profit. Therefore, the trial court did not abuse its discretion when it granted leave for plaintiff to amend her complaint to plead consistently with the proprietary-function exception.

Defendant's reliance on *Monfils v Sterling Heights*, 84 Mich App 330; 269 NW2d 588 (1978), is misplaced. In *Monfils*, the defendant city and the defendant school district were rebuilding baseball diamonds that were located on school grounds. *Id*. at 332. With several loads of sand dumped on the baseball diamond site during the rebuilding process, a child was injured after another child threw a "dirt rock" from the site at him, causing permanent vision loss in one eye. *Id*. This Court held that the defendants were engaging in a governmental function that was not for pecuniary purposes. *Id*. at 335. Because the GTLA at the time did not define "governmental function," the Court relied on caselaw which utilized the following test to determine if an activity was a governmental function:

> The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence. [*Id*. at 334-335 (quotation marks and citations omitted).]

---

[5] The flyer further noted that teams additionally were responsible for their own lift tickets for the races.

[6] Likewise, in light of the other evidence, McCarthy's blanket denials in defendant's answers to interrogatories, where he stated that defendant received "no income" and was therefore incapable of providing an accounting for that income, failed to show that there is no genuine issue on this material fact.

However, since *Monfils*, the Legislature has explicitly defined a governmental function as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.141(b); see also 1986 PA 175. Thus, the analysis of *Monfils* simply is, for the most part, not applicable, given that the *Monfils* Court was using a different definition of what constituted a governmental function. See also *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 610-612; 363 NW2d 641 (1984) (explaining the different types of tests for governmental function used prior to 1984). Moreover, to the extent *Monfils* is helpful, its underlying facts are easily distinguishable from the present case, as the baseball diamonds being rebuilt were located on public property, as opposed to a private ski resort in the present case. There also was no evidence that any of the defendants in *Monfils* retained any profit from the rebuilding of the diamonds, while in the present case, defendant potentially retained $2,800 per year as a result of running the ski race. Thus, the *Monfils*'s Court ruling that the defendants were not engaging in a proprietary function is not surprising but is quite unlike the present case.

Accordingly, we hold that the trial court did not err, based on the record before it, when it denied defendant's motion for summary disposition premised on governmental immunity. While plaintiff's current complaint may have been deficient in pleading in avoidance of governmental immunity, the trial court nonetheless did not abuse its discretion when it allowed plaintiff to amend her complaint to plead in avoidance of governmental immunity based on the proprietary-function exception.

Affirmed. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Patrick M. Meter
/s/ Michael F. Gadola
/s/ Jonathan Tukel