*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KYLE JONES,

        Defendant-Appellant.

UNPUBLISHED
June 6, 2019

No. 339556
Macomb Circuit Court
LC No. 2016-000578-FC

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a jury trial, of two counts of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b(1)(a), and one count of second-degree criminal sexual conduct ("CSC-II"), MCL 750.520c(1)(a). The trial court sentenced defendant to 25 to 30 years in prison for each CSC-I conviction and 10 to 15 years in prison for the CSC-II conviction, to be served concurrently. We affirm.

Defendant's convictions arise from the sexual assault of his five-year-old neighbor at defendant's townhouse in Harrison Township, Michigan. At trial, the victim described acts in which defendant placed his penis in her mouth and in her vagina. The victim was a friend of defendant's seven-year-old stepson. The victim also testified that defendant's stepson did the "same thing" to her. However, the trial court prohibited defense counsel from cross-examining the victim, or examining defendant's stepson, regarding their alleged prior sexual conduct. The defense theory at trial was that the victim acquired her age-inappropriate sexual knowledge from defendant's stepson, and defendant proffered a defense based on "false memory," arguing that the victim created a false memory of defendant as the perpetrator only after revealing her conduct with the stepson.

## I. CROSS-EXAMINATION

Defendant argues that the trial court erred when it prohibited cross-examination of the victim, and any examination of defendant's stepson, regarding the children's alleged prior sexual conduct. The trial court decided this issue after conducting an *in camera* hearing, during which it considered both a transcript of defendant's stepson's Care House interview and a video-

-1-

recording of the victim's forensic interview. Those materials were not provided with the lower court record submitted to this Court. They have been requested by this Court, but defendant did not respond to this Court's requests. Because the materials are necessary to properly review this issue and have not been provided despite this Court's requests, we consider this issue waived. See *PT Today, Inc v Comm'r of Fin & Ins Servs*, 270 Mich App 110, 151-152; 715 NW2d 398 (2006). We note, however, that having considered the available record and having reviewed the trial court's written opinion, we find no basis for concluding that the trial court erred by limiting the testimony on the basis of the rape-shield statute, MCL 750.520j, and *People v Morse*, 231 Mich App 424; 585 NW2d 555 (1998).

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that he was denied the effective assistance of counsel on several grounds. We disagree. Defendant did not raise in the trial court a claim that defense counsel was ineffective, but he filed a motion to remand for a *Ginther*[1] hearing, which this Court denied. Therefore, review of defendant's ineffective-assistance claims is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004); *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

The United States and Michigan Constitutions guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 US at 694.

Defendant first complains that defense counsel failed to investigate, subpoena, and examine an alternative possible perpetrator. Specifically, defendant notes the victim's claim that he had a Statue of Liberty tattoo on his arm. Defendant maintains that he has no such tattoo, but claims that another unidentified man who lived in his home for a period of time had a wood-chopper tattoo on his arm, which resembled the Statue of Liberty.

Defense counsel has a duty to make a reasonable investigation. *People v Grant,* 470 Mich 477, 485; 684 NW2d 686 (2004). A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses, meaning those that might make a difference in the outcome of the trial. *In re Ayres,* 239 Mich App 8, 22; 608 NW2d 132 (1999). In other words, defense counsel has a "duty to make reasonable investigations or to make a reasonable

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52 (quotation marks and citation omitted). But "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

As the United States Supreme Court has recognized: "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." *Strickland*, 466 US at 691. The record only establishes that defense counsel knew that another man lived in defendant's townhouse during some periods of defendant's family's 18-month lease. The parties questioned witnesses about this man during trial. Aside from defendant's self-serving claims on appeal, there is no record evidence that defendant told defense counsel that that man had a wood-chopper tattoo on his arm or that it resembled the Statue of Liberty tattoo described by the victim. Except for claiming that this man had a wood-chopper tattoo, defendant does not identify the man by name or any other way. If defendant failed to supply this information to defense counsel, counsel could not reasonably have been expected to investigate it. *Id*.

But even crediting defendant's claim that he conveyed this information about the man living in his home, there is no evidence in the record or in defendant's claims on appeal that this man had any contact with the victim, sexual or otherwise. Rather, the victim unequivocally and repeatedly identified defendant as the perpetrator in her statements to her grandmother, in the forensic interview, at the preliminary examination, and at trial. When the victim reported who lived at defendant's home, she never mentioned another adult male. Furthermore, she never testified that she saw any other adults at defendant's home when she visited. Absent any evidence that this unidentified man had contact with the victim—sexual or otherwise—there was no substantial defense involved in presenting testimony about his tattoo or calling the man to testify. It was reasonable for defense counsel not to focus on an alternative adult perpetrator when counsel's strategy was that the victim lied about any abuse by any adult. Rather, defense counsel focused on the expert's testimony about false memory and argued that the victim falsely pointed the finger at defendant after receiving attention from her revelation of sexual conduct with defendant's stepson. *Trakhtenberg*, 493 Mich at 52.

Furthermore, defendant cannot establish that, but for the alleged failure to investigate the man with the wood-chopper tattoo, there is a reasonable probability that the outcome of the proceedings would have been different. At both the preliminary examination and at trial, the victim only vaguely recalled her description of a Statue of Liberty tattoo on defendant and she could not recall at trial where it was. In any event, the record was clear that defendant did not have a tattoo resembling this description. Defendant showed his arms to the jury at trial. In addition, defendant's wife testified that defendant did not have a tattoo matching that description. And, again, even though defendant maintains the existence of a man with a tattoo resembling the victim's description, there is absolutely no evidence that the victim had any contact with that man. On the contrary, defendant's wife testified that a man was living in their home, but she kicked him out before Christmas 2014, and again kicked him out when he returned in March or

April 2015. The abuse that the victim described occurred afterward. Defendant therefore cannot establish that he was denied the effective assistance of counsel related to this possible alternative perpetrator.[2]

Next, defendant argues that defense counsel was ineffective because he failed to offer into evidence photographs of defendant's arms showing that he did not have a Statue of Liberty tattoo. As defendant notes, less than two hours after the jury began deliberating, it requested to review the tattoos. But because photographs of the tattoos were not admitted as an exhibit, the trial court instructed the jury to rely on its collective memory. Jury deliberations continued for two days afterward. Even though defendant argues that photographs of his tattoos would have assisted the jury during deliberations, the record demonstrates that evidence regarding his tattoos was presented by defense counsel at trial in alternative ways. Again, defendant showed his arms to the jury during trial and his wife testified that defendant did not have a Statue of Liberty tattoo. Because photos would have been cumulative evidence, defendant cannot establish that, but for defense counsel's failure to offer them, there is a reasonable probability that the outcome of the trial would have been different.

## III. ADMISSION OF EVIDENCE

Finally, defendant challenges the admissibility of two points of the victim's grandmother's testimony. Defendant's unpreserved challenges are reviewed for plain error affecting substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014).

First, defendant argues that the grandmother improperly testified regarding the victim's statements to her, which the victim made several months after the sexual assaults. Defendant argues that the victim's hearsay statements did not qualify for admission under MRE 803A. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Douglas*, 496 Mich 557, 574; 852 NW2d 587 (2014) (citation omitted); see also MRE 103(a)(1). At trial, defense counsel only generally objected that the testimony constituted hearsay, but made no reference to the requirements under MRE 803A. Therefore, this issue is unpreserved. We review this unpreserved challenge for plain error affecting defendant's substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014).

There is no dispute that the victim's statements to her grandmother constituted hearsay under MRE 801(c) because they were out-of-court statements "offered in evidence to prove the

---

[2] Defendant urges this Court to remand for a *Ginther* hearing. In his affidavit submitted pursuant to MCR 7.211(C)(1)(a)(*ii*), defendant claimed that defense counsel said he was focusing on acquitting defendant, not proving that someone else committed the crimes. As addressed earlier, defense counsel's strategy was that the victim lied about being abused by any adult. Moreover, defendant has not made an offer of proof establishing a link between the victim and the mystery man. Because defendant cannot overcome the presumption that counsel's strategy was sound, remand is not required. *Horn*, 279 Mich App at 39.

truth of the matter asserted." The prosecutor offered the hearsay under MRE 803A, which is known as the tender years exception. MRE 803A provides, in relevant part:

A statement describing an incident that included a sexual act performed with or on the declarant by the defendant . . . is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

Defendant challenges the third prong of MRE 803A(3), arguing that the victim's statements were not made immediately after the incident and there was no excusable delay. The allegations arose from events occurring around May 2015, and the victim did not report the allegations to her grandmother until September 2015. But as cited in defendant's own statement of facts in a brief submitted to the trial court, police reports demonstrated that the victim told her grandmother that she did not tell her parents what had happened because she "didn't want them to be mad at her," and defendant "told her not to say anything to anyone and if she does, she is only to tell [defendant's stepson] because he already knows." Given this record of excusable delay, defendant cannot establish plain error pursuant to MRE 803A(3).

Second, defendant argues that the grandmother impermissibly testified that the victim did not understand her estimate that the sexual conduct occurred 20 times. Again, defendant's failure to object to this testimony limits our review to plain error affecting substantial rights. *Vandenberg*, 307 Mich App at 61.

Under MRE 701, a lay witness's testimony is limited to opinions and inferences that are rationally based on the witness's perception and "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." A witness cannot provide his own opinions when the jury is equally capable of reaching a conclusion; this would invade the province of the jury. *Freed v Salas*, 286 Mich App 300, 347; 780 NW2d 844 (2009); see also *People v Fomby*, 300 Mich App 46, 52-53; 831 NW2d 887 (2013). A lay witness may offer an opinion on matters that are related to her observations and findings and are not "overly dependent upon scientific, technical, or other specialized knowledge." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), mod on other grounds 433 Mich 862 (1989) (citation

omitted); see also *People v McLaughlin*, 258 Mich App 635, 657-659; 672 NW2d 860 (2003). Courts have liberally applied MRE 701 to help develop a clearer understanding of facts for the trier of fact. *Oliver*, 170 Mich App at 50.

The grandmother had lived with, and cared for, the victim for months by the time that she revealed the sexual abuse. At that time, the child was only six years old. Based on her personal knowledge of the victim, the grandmother opined that the victim did not understand how many "20" was, but "just knows that's a big number." The grandmother had personally observed the victim's understanding of numbers and quantities in daily life, and could opine that she understood that 20 was a big number, but did not grasp what it quantified. Therefore, defendant cannot establish plain error from the grandmother's testimony. In addition, defendant's expert similarly testified that the victim's estimate was "broad" and he "would not expect her to have catalogued each and every incident or have recorded it on her iPad." Given defendant's own expert opinion, any error resulting from the grandmother's lay opinion testimony did not affect defendant's substantial rights.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto