*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF ENVIRONMENT GREAT LAKES AND ENERGY,

Plaintiff-Appellant,

v

HOLLOO FARMS LLC,

Defendant-Appellee.

FOR PUBLICATION
August 22, 2024
9:15 a.m.

No. 365934
Calhoun Circuit Court
LC No. 2022-001077-CE

Before: REDFORD, P.J., and GADOLA, C.J., and RIORDAN, J.

REDFORD, P.J.

Plaintiff, the Department of Environment, Great Lakes, and Energy (EGLE) appeals as of right the trial court opinion and order granting defendant summary disposition and dismissing EGLE's complaint on the basis that EGLE failed to comply with the offer-to-meet provision in MCL 324.1511(1)(b). For the reasons stated in the opinion, we conclude that the trial court did not err by granting summary disposition; however, the trial court abused its discretion by denying EGLE leave to amend its complaint. We affirm in part, reverse in part and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Holloo Farms is regulated as a concentrated animal feeding operation (CAFO) under the federal Clean Water Act, 33 USC 1251 *et seq.*, and state law under Part 31 (Water Resources Protection), MCL 324.3101 *et seq.*, of the Natural Resources and Environmental Protection Act (NREPA). CAFOs are large-scale agricultural operations that raise hundreds or thousands of animals. *Mich Farm Bureau v Dep't of Environment, Great Lakes, and Energy*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165166); slip op at 3. A byproduct of these operations is large quantities of manure and wastewater. *Id.* CAFOs often dispose of this byproduct by applying it to nearby farm fields. *Id.* When improperly applied, excess wastewater may runoff into groundwater or navigable waters, impairing the quality of water. *Id.* at ___; slip op at 3-4. Consequently, CAFOs are subject to regulation under a permitting system. Recently, our Supreme Court described the regulation of CAFOs as follows:

In furtherance of its goal to restore and maintain the integrity of our nation's water, see *Maui v Hawaii Wildlife Fund*, 590 US 165, 170; 140 S Ct 1462; 206 L Ed 2d 640 (2020), the Clean Water Act sets up a permitting system known as the National Pollutant Discharge Elimination System (NPDES) program. See 33 USC 1342. Under the Clean Water Act, "point sources" are prohibited from discharging any pollutants into navigable waters unless they have a valid NPDES permit. See *Maui*, 590 US at 171. Point sources are "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 USC 1362(14) (emphasis added). [*Mich Farm Bureau*, ___Mich at ___; slip op at 2-3.]

EGLE administers the NPDES system in Michigan. *Id*. at ___; slip op at 4. CAFOs apply for coverage under a general permit.[1] Mich Admin Code, R 323.2192(a). Once covered under the general permit, CAFOs must comply with the requirements in the general permit, the Administrative Code, and statute. See e.g., Mich Admin Code, R 323.2137; Mich Admin Code, R 323.2196.

EGLE's enforcement provisions are contained in Part 15 of the NREPA, MCL 324.1501 *et seq*. EGLE's enforcement authority includes inspection of CAFO facilities and operations for noncompliance, including inspections in response to third-party complaints. MCL 324.1505(2)(a). In instances in which EGLE seeks to file a civil enforcement action against a permittee for noncompliance, EGLE must first provide the permittee with a written list of the specific provisions of statute, rule, or permit the permittee was alleged to have violated and a statement of the facts constituting the violation. MCL 324.1511(1)(a). Additionally, EGLE must first contact the permittee and extend an offer to meet to discuss the potential civil enforcement action and resolution of the issue. MCL 324.1511(1)(b). At the center of this appeal is whether EGLE complied with the offer-to-meet provision in MCL 324.1511(1)(b) before bringing a civil enforcement action against Holloo Farms as it relates to allegations of violations which were memorialized in EGLE Violation Notice No. VN-012570, issued January 18, 2022.

This appeal arises out of Holloo Farms' alleged noncompliance with the general permit. EGLE's complaint sets forth multiple violation notices and attaches most, if not all, to their

---

[1] We recognize that on July 31, 2024, our Supreme Court vacated this Court's decision regarding general permits. *Mich Farm Bureau v Dep't of Environment, Great Lakes, and Energy*, 343 Mich App 293; 997 NW2d 467 (2023), aff'd in part and vacated in part ___ Mich ___ (Docket No. 165166). However, that opinion did not address the requirements of MCL 324.1511.

complaint.[2]  Holloo Farms was a "Large CAFO"[3] that operated at two locations, Holloo Farms Headquarters and Holloo Farms satellite location.  Holloo Farms Headquarters was located in Marshall, Michigan.  It applied CAFO waste from its cattle operation to surrounding land.  The satellite location was located in Homer, Michigan.  EGLE pleaded that Holloo Farms did not disclose the existence of the satellite location or where it applied its waste.  Holloo Farms was subject to regulation under the 2015 general permit.

EGLE alleges that Holloo Farms has a history of noncompliance stemming as far back as 2004.  As relevant to this appeal, EGLE twice inspected the land near Holloo Farms Headquarters in 2014 in response to a citizen complaint about unlawful discharges.  EGLE issued a violation notice to Holloo Farms that described the alleged violations and extended an offer to meet.  The alleged violations in that notice included applying waste to frozen land, overapplication of waste, inadequate recordkeeping, and stormwater contamination.

In 2017, EGLE evaluated Holloo Farms' annual report submitted in accordance with the general permit, and concluded that Holloo Farms overapplied waste to the application land.  EGLE sent correspondence in March 2017 explaining its analysis, including its determination that Holloo Farms overapplied nitrogen on multiple corn silage fields and soybean fields, that the annual report listed unrealistic corn silage yield goals, and that Holloo Farms had not complied with the requirement to sample soil from fields subject to land application every 3 years.  In June 2017, EGLE inspected Holloo Farms and issued a violation notice explaining the violations observed during the inspection.  The violation notice included an offer to meet.

In 2019, in response to a citizen complaint regarding suspected contamination in the Budlong Drain, EGLE again inspected Holloo Farms and noticed discharge from Holloo Farms' application fields that ran into nearby drains.  EGLE also observed land application and recordkeeping violations. EGLE issued a violation notice in April 2019, which detailed the alleged violations and included an offer to meet.  EGLE also inspected Holloo Farms Headquarters on September 24, 2019, and documented violations in addition to those listed in the April 2019 violation notice.  The second notice, entitled "Second Violation Notice and Enforcement Notice," specified that Holloo Farms failed to properly maintain and manage waste storage structures, including failure to use a depth gauge on an Earthen Structure, overgrown woody vegetation, and failure to maintain the integrity of storage structures.  It also specified that Holloo Farms failed to maintain complete records of land application.  The second 2019 notice included an offer to meet.

---

[2] See particularly EGLE Exhibit J, second violation notice, dated November 4, 2019.  In it, EGLE references violation and/or compliance notices dated March 3, 2014, March 31, 2017, June 26, 2017, and April 19, 2019.  See also Exhibit P, EGLE Violation Notice VN-012570, dated January 18, 2022.

[3] A large CAFO is an animal feeding operation that confines a minimum number of animals, including the following categories: 700 mature dairy cows; 1,000 cattle other than mature dairy cows or veal calves; 2,500 swine 55 pounds or more; 125,000 chickens, and other large quantities of specified animals.  Mich Admin Code, R 323.2103(g).

In October 2021, EGLE referred Holloo Farms' outstanding violations to the Attorney General and sent Holloo Farms' counsel a letter stating that it would pursue enforcement proceedings if Holloo Farms could not reach a resolution with EGLE. Following this letter, EGLE conducted another inspection of Holloo Farms Headquarters. In January 2022, EGLE issued Holloo Farms another violation notice that acknowledged that the parties had met various times over several years and Holloo Farms made some changes to comply with the general permit. The violation notice described the November 2021 meeting as a last effort at resolving Holloo Farms' longstanding noncompliance before resorting to litigation. The violation notice also listed alleged violations observed during the 2021 inspection. This violation notice did not contain an offer to meet. This is the only violation notice issued by EGLE which did not contain an offer to meet.

In March 2022, the Attorney General filed a complaint against Holloo Farms. The complaint listed five counts: (1) injurious discharges to groundwater; (2) contaminating clean stormwater; (3) improper land application and associated unlawful discharge (4) waste storage structure violations; and (5) comprehensive nutrient management plan (CNMP) violations. The counts relied on violations from before the November 2021 inspection, as well as violations observed during the November 2021 inspection and listed in the January 2022 violation notice.

Holloo Farms moved for summary disposition under MCR 2.116(C)(8) and (C)(10) and requested that the trial court dismiss the action with prejudice. Holloo Farms argued that EGLE did not comply with the precondition to litigation in the offer-to-meet provision in MCL 324.1511 for the violations alleged in the 2022 violation notice. Holloo Farms argued that the violations alleged in the 2022 violation notice were new and it was not given the opportunity to meet and remedy the alleged violations before EGLE resorted to litigation. In response, EGLE argued that there was no dispute that EGLE satisfied its burden under MCL 324.1511 for the violations identified in the 2019 violation notices and earlier violation notices. EGLE argued that it was not required to extend Holloo Farms an additional offer to meet simply because it issued another violation notice in 2022 after extending several offers to meet to Holloo Farms over several years.

The trial court issued an opinion from the bench granting Holloo Farms summary disposition and dismissing the complaint without prejudice. The trial court explained that EGLE did not comply with MCL 324.1511(1)(b) before initiating litigation: "These are new violations in my opinion, and they require you to comply with [MCL] 324.1511, and you have not done so. The case will be dismissed without prejudice, and you must comply with the statute before reinitiating that."

During the hearing, EGLE moved to amend its complaint to excise pleadings related to the 2022 violation notice. The trial court denied this motion, explaining, "No. You should've done that to begin with. All right?" The trial court entered an order granting defendant's motion for summary disposition under MCR 2.116(C)(8) and (C)(10) for the reasons stated on the record. EGLE moved for reconsideration arguing that nothing in MCL 324.1511 required EGLE to continuously offer meetings after each violation notice. Alternatively, EGLE argued that it was entitled to amend its complaint to only include the violations cited in the 2019 violation notices and earlier notices because it complied with MCL 324.1511 in relation to those violations. The trial court denied the motion without oral argument. This appeal followed.

## II.  OFFER-TO-MEET PROVISION

EGLE argues that the trial court erred by granting summary disposition in favor of Holloo Farms and dismissing the complaint.  Specifically, EGLE asserts that the trial court erroneously concluded that the offer-to-meet provision in MCL 324.1511(1)(b) required EGLE to continue to extend offers to meet after each violation notice issued despite extending previous offers to meet.  We disagree.

### A.  STANDARD OF REVIEW

We review de novo matters of statutory interpretation, construction, and application. *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019).  We also review a trial court's decision regarding a motion for summary disposition de novo.  *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020).  A motion is properly granted under MCR 2.116(C)(8) when the opposing party fails to state a claim upon which relief can be granted.  Such a motion "tests the legal sufficiency of the claim on the basis of the pleadings alone . . . ." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013).  When reviewing the motion, the trial "court must accept as true all factual allegations contained in the complaint." *Id*.  The trial court must grant the motion "if no factual development could justify the plaintiff's claim for relief." *Id*. (quotation marks and citation omitted).

Under MCR 2.116(C)(10), a party is entitled to summary disposition when the evidence does not present a genuine issue of material fact. *Jewett*, 332 Mich App at 470.  "A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue upon which reasonable minds might differ." *MacDonald v Ottawa Co*, 335 Mich App 618, 622; 967 NW2d 919 (2020) (quotations marks and citation omitted).  "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Jewett*, 332 Mich App at 470 (quotation marks and citation omitted).  This includes "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004).  "A court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted; emphasis omitted).

### B.  GENERAL PRINCIPLES OF STATUTORY INTERPRETATION

This matter involves the interpretation and application of a statute:

All matters of statutory interpretation begin with an examination of the language of the statute.  The primary rule of statutory construction is that, where the statutory language is clear and unambiguous, the statute must be applied as written.  A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself."  A statutory term or phrase cannot be viewed in isolation, but must be construed in accordance with the surrounding text

and the statutory scheme. [*McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018) (quotation marks and citation omitted).]

Stated otherwise, a "statute must be read as a whole." *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). "Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). Courts "give undefined statutory terms their plain and ordinary meanings." *Id*.

## C. ANALYSIS

We have not had previous occasion to address the offer-to-meet provision or any part of MCL 324.1511. We start with the language of the statute. See *McQueer*, 502 Mich at 286. MCL 324.1511 states, in relevant part:

> (1) Subject to subsection (2) and notwithstanding any other provision of this act, before initiating a civil enforcement action under this act against a person, the department shall do both of the following:
>
> (a) Beginning May 1, 2019, provide the person in writing a list of each specific provision of statute, rule, or permit that the person is alleged to have violated and a statement of the facts constituting the violation.
>
> (b) Contact the person and extend an offer for staff of the department to meet with the person to discuss the potential civil enforcement action and potential resolution of the issue. If the person agrees to meet with the department, the department shall not initiate a civil enforcement action until after the meeting is held, unless the meeting is not held within a reasonable time of not less than 60 days. [MCL 324.1511(1).]

The plain language of Subsection 1511(1) sets out two mandatory conditions precedent to initiating a civil enforcement action as indicated by the statutory phrase: "[B]efore initiating a civil enforcement action under this act against a person, the department *shall do both* of the following . . . ." (emphasis added). By use of the term "shall," the Legislature indicates that satisfaction of the requirements in the two subdivisions following this language are mandatory preconditions to initiate a civil enforcement action. See *Fradco, Inc, v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014) ("The Legislature's use of the word 'shall' . . . indicates a mandatory and imperative directive.").

Subdivisions (a) and (b) respectively contain a notice provision and an offer-to-meet provision. These provisions are interrelated. The notice provision in Subdivision (a) requires that EGLE provide the person a written list of *each* specific provision of statute, rule, or permit that the person is alleged to have violated and provide a statement of the facts constituting the violation. Following this provision of notice, in Subdivision (b), EGLE must contact the person and extend an offer to meet to discuss the potential civil enforcement action and potential resolution of the issues. Given these subdivision's placement together, it necessarily follows that EGLE would first provide written notice of the violations before extending an offer to discuss the action and resolution of the issues.

-6-

Review of the statutory language of Subdivision (b) in relation to the Subsection expresses a legislative intent for EGLE to meet with the permitee and to discuss resolution of all issues that would comprise the potential action. Subdivision (b) provides that before initiating the action, EGLE must extend an offer to meet to discuss the "potential civil enforcement action" and "potential resolution of the issue." The term "action," appears in both in Subdivision (b) and the subsection housing Subdivision (b). "Action" was previously defined by our Supreme Court in accordance with its definition in *Black's Law Dictionary* (11th ed) as "[a] civil or criminal judicial proceeding." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 559; 886 NW2d 113 (2016). "Resolution" is defined, as relevant to this appeal, as "the act or process of resolving," and "the act of answering : SOLVING." *Merriam-Webster's Collegiate Dictionary*. The noun "issue" is defined, as relevant to this appeal, as "a matter that is in dispute between two or more parties" or "CONCERN, PROBLEM." *Merriam-Webster's Collegiate Dictionary*. When read together, the statute directs EGLE to discuss the possibility of litigation and all of the issues that would comprise the contemplated litigation with the permitee. This necessarily requires that EGLE extend an offer to meet each time it issues a new violation notice if it wants to include those facts in future litigation.

EGLE contends that this interpretation of the statute creates a continuous violation or "repeat offender" loophole because it requires EGLE to provide notice and an offer to meet for each new alleged violation it observes. We see no such loophole in the statutory language. The offer-to-meet provision directly addresses when EGLE may file an action after offering to meet. The provision states, "If the person agrees to meet with the department, the department shall not initiate a civil enforcement action until after the meeting is held, unless the meeting is not held within a reasonable time of not less than 60 days." MCL 324.1511(1)(b). EGLE's duty under this statutory language is clearly spelled out. If after complying with the notice and offer-to-meet provision, the person declines to meet, nothing prevents EGLE from immediately initiating an enforcement action. However, if the person agrees to meet, EGLE must wait until the meeting is held, unless that meeting is not held within a reasonable time of not less than 60 days. All EGLE had to do was offer Holloo Farms an opportunity to meet. At most, this would have required EGLE to wait 60 days before initiating litigation if the parties could not resolve the issues. We acknowledge that in many instances environmental enforcement actions will involve allegations of ongoing violations. However, this is true of many enforcement actions and ordinary civil actions.

EGLE further contends that failure to meet the requirements of MCL 324.1511 does not require dismissal of the case because the statute does not list any consequence for noncompliance. Citing *Christie v Wayne State Univ*, 511 Mich 39; 993 NW2d 203 (2023), EGLE argues that unlike the language in MCL 600.6431(1) of the Court of Claims Act at issue in that case, MCL 324.1511 contains no express bar to litigation. EGLE's argument ignores the plain language of the statute at issue.

In *Christie*, our Supreme Court held that all parties with claims against the state, except those exempted in MCL 600.6431 itself, must comply with the requirements listed in the statute, including claims initiated in the circuit court. *Id*. at 45. The notice provision at issue in that case states as follows:

Except as otherwise provided in this section, *a claim may not be maintained against this state unless* the claimant, within 1 year after the claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its departments, commissions, boards, institutions, arms, or agencies. [MCL 600.6431(1) (emphasis added).]

Noncompliance with the statutory language resulted in dismissal of the action without prejudice. *Christie*, 511 Mich at 57. EGLE relies on *Christie* and MCL 600.6431(1) as an example in which the plain language of the statute contains an express bar to litigation.

The language in MCL 600.6431(1) however is not the only language by which the Legislature can express that a condition is a mandatory precondition to litigation. Although the language in MCL 324.1511 differs from the language in MCL 600.6431, it contains its own mandatory directive. The provision states: *"[B]efore initiating a civil enforcement action* under this act against a person, the department *shall do both* of the following . . ."* and proceeds to list the notice and offer-to-meet provisions. MCL 324.1511(1) (emphasis added). As previously indicated, when used in a statute the term "shall" connotes a mandatory duty. See *Fradco, Inc*, 495 Mich at 114. The statutory language is clear and we must avoid statutory interpretations that render statutory language meaningless. See *State Farm Fire & Cas Co*, 466 Mich at 146. By inclusion of a mandatory directive in this subsection, EGLE was required to satisfy two preconditions before initiating litigation. Failure to do so would result in dismissal.

With this understanding of the statutory language, we apply the statute to EGLE's complaint against Holloo Farms. EGLE satisfied both the notice and offer-to-meet provisions in relation to the notices sent to Holloo Farms in 2019 and earlier. However, after inspecting Holloo Farms in November 2021, EGLE issued a new Notice of Violation on January18, 2022, citing alleged violations from the November 2021 site-inspection. Unlike the previous violation notices, this notice did not extend an offer to meet. Rather than extending an offer to meet regarding the January violation notice, EGLE commenced this action by filing a complaint in the circuit court on March 29, 2022. By failing to extend an offer to meet and waiting the requisite time listed in the statute if Holloo Farms accepted the offer, EGLE did not comply with the mandatory directive of MCL 324.1511(1). Despite failing to meet this requirement, EGLE filed a complaint which included allegations related to the 2022 violation notice. Accordingly, the trial court did not err by granting summary disposition in favor of Holloo Farms.

We hold, therefore, before commencing an action under MCL 324.1511(1), EGLE must provide notice and the opportunity to meet, based on the factual allegations set forth in the complaint. We note nothing in this holding prevents, on the facts of this case, EGLE from bringing an action under MCL 324.1511(1) for which notice and an offer to meet has taken place; nor does it preclude EGLE from commencing such an action and continuing to investigate and, if they determine it is necessary to do so, bringing either a new action or potentially seeking to amend the previously filed complaint based on conduct such as was alleged in the January 18, 2022 Notice of Violation, so long as the statutory offer to meet on this new conduct has taken place and such filing is authorized by Michigan statutes, court rules, and common law.

EGLE argues that even if the trial court properly granted summary disposition in favor of Holloo Farms, the trial court abused its discretion when it denied EGLE's request to amend its complaint to excise the portions that did not comply with MCL 324.1511. We agree.

"We review for an abuse of discretion a circuit court's decision to grant or deny leave to amend a pleading; we will only reverse the court's ruling if it occasions an injustice." *Boylan v Fifty Eight, LLC*, 289 Mich App 709, 727; 808 NW2d 277 (2010). "A court does not abuse its discretion if it selects an outcome falling within the range of reasonable and principled outcomes." *Id*.[4] "There is no injustice if the proceedings would have reached the same result if the trial court had not denied a party leave to amend its pleadings." *PT Today, Inc v Comm'r of Office of Fin and Ins Servs*, 270 Mich App 110, 142; 715 NW2d 398 (2006).

When the grounds asserted for summary disposition are subrule MCR 2.116(C)(8) or (C)(10), MCR 2.116(I)(5) provides "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." This Court recently explained:

> "[L]eave [to amend] should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *Decker v Rochowiak*, 287 Mich App 666, 682; 791 NW2d 507 (2010) (quotation marks and citation omitted). With respect "to undue delay, delay, alone, does not warrant denial of a motion to amend. However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Id*. (brackets, quotation marks, and citation omitted). "Prejudice to a defendant that will justify denial of leave to amend arises when the amendment would prevent the defendant from having a fair trial." *Knauff v. Oscoda Co. Drain Comm'r*, 240 Mich App 485, 493; 618 NW2d 1 (2000). Importantly, "[t]he prejudice must stem from the fact that the new allegations are offered late and not from the fact that they might cause the

---

[4] Holloo Farms cites the *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959), definition of abuse of discretion:

> In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but definace [sic] thereof, not the exercise of reason but rather of passion or bias.

In *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006), our Supreme Court abandoned the *Spalding* definition of abuse of discretion and replaced it with the definition articulated in *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). The *Spalding* definition only applies to appeals involving a trial court's exercise of discretion in child custody disputes. See *Fletcher v Fletcher*, 447 Mich 871; 526 NW2d 889 (1994).

defendant to lose on the merits." *Id*. [*Bailey v Antrim Co*, 341 Mich App 411, 432-433; 990 NW2d 372 (2022) (alterations in original).]

"The trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile." *PT Today, Inc*, 270 Mich App at 143.

The only reason the trial court provided to deny EGLE leave to appeal was that EGLE should have filed its complaint in compliance with the offer-to-meet provision in the first place. The trial court made no mention of delay, bad faith, or prejudice. Seemingly, with this statement, the trial court agreed that EGLE's complaint would comply with MCL 324.1511 if EGLE excised reference to the 2022 violation notice. Because the trial court did not specify its reasons for denying leave to amend, reversal is required unless the amendment would be futile. See *id*. "An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Mich Head & Spine Inst, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 277; 951 NW2d 731 (2019). In this case, permitting an amendment to the complaint for purposes of excising the portions that did not comply with MCL 324.1511 would not have been futile under these standards. This amendment would not have added new factual allegations. The trial court abused its discretion by denying leave to amend the complaint in this respect.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael F. Gadola
/s/ Michael J. Riordan

-10-