*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CA, INC.,

        Plaintiff-Appellant,

v

GENERAL MOTORS HOLDINGS, LLC, and
GENERAL MOTORS, LLC,

        Defendants-Appellees.

UNPUBLISHED
December 17, 2025
1:42 PM

No. 371159
Wayne Circuit Court
LC No. 23-015374-CB

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Plaintiff, CA, Inc. (CA), appeals as of right an opinion and order granting summary disposition to defendants, General Motors Holdings, LLC, and General Motors, LLC (GM), under MCR 2.116(C)(8) (failure to state a claim). CA also appeals the trial court's denial of its request to amend the complaint following the granting of GM's motion for summary disposition. We affirm the trial court in all regards.

## I. FACTUAL BACKGROUND

CA is a Delaware corporation and a wholly owned subsidiary of Broadcom, Inc., with its principal place of business in San Jose, California. GM is a Delaware limited liability company with its principal place of business in Detroit, Michigan. On September 28, 2015, CA and GM entered into an Amended and Restated Enterprise Software License Agreement (the 2015 License Agreement), under which CA licensed certain software and services to GM. The 2015 License Agreement allowed GM or its authorized third parties to submit written orders for licensed software from CA.

On September 28, 2020, GM[1] and CA entered into a Product Renewal Notification and Software Order Form ("Order Form"), which amended and supplemented the 2015 License Agreement. The 2020 Order Form set forth specific payments, including a payment to CA of $12,893,895, due September 28, 2022, pursuant to the payment terms of the 2015 License Agreement.

Relevant to this appeal are the termination provisions contained in the 2015 License Agreement and the 2020 Order Form. Section 5.3 of the 2015 License Agreement states:

> Termination for Convenience. GM reserves the right to terminate this Agreement, in whole or in part, at any time, without cause, upon thirty (30) calendar days prior written notice to Licensor. If GM terminates for convenience during the Initial Term of the Agreement, GM shall remain contractually bound to fulfill all GM obligations and responsibilities, including but not limited to any Fees that would otherwise be owed and payable during the Initial Term, but for the termination. If GM terminates for convenience during a Renewal Term of the Agreement, GM shall remain contractually bound to fulfill all GM obligations and responsibilities, including but not limited to any Fees that would be otherwise be owed and payable during the three year Renewal Term but for the termination.

The termination provision in the 2020 Order Form[2] states:

> The parties acknowledge and agree that the Termination for Convenience provision, below, expressly supersedes both Section 5.3 of the CA Agreement and Section 5.3 of the Symantec Agreement.
>
> Termination for Convenience. GM may terminate the Agreement(s), this Order Form, together with each and all Purchase Orders, or any order forms or other ordering documents in effect as of the date of termination, (collectively, the "Existing Agreement"), without cause and without further charge or expense at any time, immediately upon written notice to CA sent to usagereporting@broadcom.com. On or after the termination date, with the exception of any fully paid-up Perpetual Licenses if the termination is effective after the initial Term, GM must either: a) delete all full or partial copies of the Licensed Software from all computing or storage equipment and verify such deletion in a statement signed by a Vice-President or a duly authorized representative and sent to usagereporting@broadcom.com, orb) return to CA all full or partial copies of the Licensed Software. Once GM's verification or the

---

[1] Specifically, GM Holdings, LLC, as successor-in-interest to General Motors Corporation and its subsidiary, General Motors, LLC, entered the 2020 Order Form. For our purposes, there appears to be no meaningful distinction between the various entities aside from their names. For the sake of clarity, we will continue to refer to General Motors, LLC, as "GM."

[2] This provision is sometimes referred to in the record as "amended Section 5.3," but the 2020 Order Form does not include a specific title or section number for the termination provision.

Licensed Software copies are received, CA will pay GM a pro-rata refund of any license and/or support fees GM pre-paid ("Refund Fees") in accordance with the paragraph below. Refund Fees will be calculated on the number of months remaining in the term of the applicable Purchase Order. If the Licensed Software is licensed under a Perpetual license, GM will receive a pro-rated refund of the license fee only if notice of termination is issued during the initial term of the applicable Purchase Order. In the event GM terminates for convenience prior to September 27, 2023, as described under this Section, the Parties agree that GM will retain the right, pursuant to the Agreement(s) to (i) continue using the Unlimited Deployment Licensed Software, solely in the quantities set forth in the table above entitled "Unlimited Deployment Perpetual Licensed Software as of Effective Date of this Order Form"; and (ii) continue using all other Perpetual licenses at the current authorized use limitations, that are not Unlimited Deployment Perpetual licenses after the termination date.

In the event of a termination by GM pursuant to this provision, if the Existing Agreement is terminated without cause, neither party shall have further obligations under the terminated portions of the this [sic] Agreement, except for those provisions that survive termination under the Agreement by their terms. Refund Fees will be paid within sixty (60) days from the termination date, and any unpaid fees reflecting the "CA Offerings" (defined as Licensed Software, Services and professional services for purposes of this section) delivered prior to the termination date shall become immediately due and payable in accordance with the payment terms set forth in the Agreement.

On September 1, 2022, GM sent a notice to CA purporting to terminate only the 2020 Order Form and any purchase orders associated with it. CA responded on September 9, 2022, stating that under the terms of the Order Form, GM could only terminate for convenience by terminating the entire 2015 License Agreement, not just the 2020 Order Form. GM refused to either terminate the entire 2015 License Agreement or pay the amount owed to CA under the 2020 Order Form.

In November 2023, CA filed a complaint against GM, alleging breach of contract and requesting that the trial court issue a declaratory judgment in CA's favor. In lieu of answering the complaint, GM moved for summary disposition under MCR 2.116(C)(8). GM argued that CA's breach and declaratory judgment claims were meritless because the 2020 Order Form allowed GM to terminate the Order Form for convenience "without further charge or expense at any time." GM maintained that it exercised that right before the final year began, meaning no payment was due. GM additionally emphasized that the 2020 Order Form's termination clause used the disjunctive "or," indicating that it allowed for the termination of specific documents without terminating all agreements between the parties.

GM further argued that CA could not show causation or damages because termination discharged the final payment, and CA did not allege that it provided post-termination software or services. GM contended that CA's theory that GM had to terminate all agreements to make its termination effective was untethered to any actual harm and would create an unreasonable, all-or-nothing condition not found in the contract language. Finally, GM argued that CA's request for a

declaratory judgment failed for the same reasons. GM asked the court to enforce the 2020 Order Form as written and recognize GM's right to terminate the Order Form alone.

CA responded that GM's motion under MCR 2.116(C)(8) failed because CA's complaint plausibly alleged a claim of breach of contract resulting in damages and a basis for declaratory relief under Michigan's liberal notice-pleading standards. CA contended that the termination provision from the 2020 Order Form defined "Existing Agreement" to include the 2015 License Agreement, the 2020 Order Form, and "each and all" purchase orders and other ordering documents in effect as of termination, meaning that GM could not terminate only the 2020 Order Form while leaving other components in place. CA pointed out that the structure of Article 5 of the 2020 Order Form supported this reading: Section 5.1 (termination for cause) expressly allowed for termination of a particular license or purchase order, showing the parties knew how to authorize item-by-item termination when intended, whereas the amended Section 5.3 did not. CA also pointed to the negotiation history reflected in the complaint, stating that it insisted on deleting "in whole or in part" to avoid partial terminations, in order to show the intent behind the amendment. CA claimed that this extrinsic evidence would at minimum preclude dismissal if any ambiguity were found.

CA rejected GM's damages arguments as misrepresenting the claim, stressing that the damages equaled the unpaid contractual amount and flowed directly from the missed payment, which CA contended was sufficient at the pleading stage. CA additionally maintained that its declaratory-judgment claim stood independently because an actual controversy existed over the meaning and operation of the 2020 termination provision, and GM offered no separate basis for dismissal. Finally, if the court found any pleading deficiency, CA requested leave to amend under MCR 2.116(I)(5) and MCR 2.118, because amendment would not be futile.

GM replied that the 2020 Order Form covered both CA and Symantec[3] offerings, which was why it lacked the "in whole or in part" language found in the 2015 License Agreement. GM reiterated that the termination provision of the 2020 Order Form permitted selective termination of different categories of documents because it listed multiple items connected by the disjunctive "or." GM further argued that the collective term "Existing Agreement" was simply a label for whichever set of documents GM chose to terminate at a given time. GM emphasized the plural "Agreement(s)" and the permissive "may" in the 2020 Order Form termination provision as evidence that termination was optional and selective, not mandatory and global across all agreements. GM also argued that the termination provision in the Order Form governed termination for convenience for the Order Form only and did not expressly supersede the termination provision in the 2015 License Agreement.

The trial court held a hearing on the motion in April 2024. In May 2024, the trial court issued an opinion and order granting GM's motion for summary disposition. The trial court found that the 2020 termination provision expressly superseded Section 5.3 of the 2015 License Agreement. The court agreed with GM that the disjunctive structure of the provision allowed for selective termination, noting that using the word "or" provided GM a choice among alternatives rather than forcing GM into an all-or-nothing termination. The court further found that the phrase

_____

[3] CA is a successor-in-interest to Symantec Corporation, and offers Symantec software products.

"together with each and all Purchase Orders" modified "this Order Form," meaning that if GM terminated the Order Form, it was also required to terminate "each and all Purchase Orders" under that Order Form. The court explained that GM need not terminate the separate 2015 License Agreement or other order forms and documents. The court further explained that the phrase "Existing Agreement" referred to whatever combination of agreements GM elected to terminate. The court found that the term could not reasonably mean all listed documents because the disjunctive "or" allowed for selective termination.

Applying this interpretation, the trial court observed that GM sent notice terminating the Order Form and associated purchase orders before the annual prepayment date. The court found that, because the termination provision allowed for termination "without cause and without further Charge or expense . . . immediately upon written notice," GM's termination before the next annual prepayment date meant no fees were due for the 2022-2023 period, defeating CA's breach theory. The court opined that CA's declaratory judgment claim failed for the same reasons, again rejecting CA's interpretation that GM had to terminate all agreements. Finally, the court denied CA's request to amend its complaint. The court reasoned that amendment would not cure any legal insufficiency because the 2020 Order Form's termination provision unambiguously permitted GM's selective termination. This appeal followed.

## II. ANALYSIS

### A. SUMMARY DISPOSITION

CA argues that the trial court erred by granting summary disposition to GM. CA maintains that it adequately pleaded its breach-of-contract and declaratory-judgment claims. We disagree.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Here, the trial court granted GM's motion for summary disposition under MCR 2.116(C)(8). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim. *Id*. A trial court reviewing such a motion must accept all factual allegations as true and decide the motion on the pleadings alone. *Id*. at 160. Summary disposition may be granted only when a claim is so clearly unenforceable that no factual development could possibly justify recovery. *Id*.[4] To the extent that this issue concerns questions regarding the proper interpretation of contracts, we likewise review such issues de novo.

---

[4] "[W]hen an action is premised on a written contract, the contract generally must be attached to the complaint and thus becomes part of the pleadings." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 212; 933 NW2d 363 (2019), lv den 505 Mich 994 (2020). Here, neither the 2015 License Agreement nor the 2020 Order Form were attached to the complaint. Instead, they were submitted to the trial court for the first time as attachments to GM's motion for summary disposition. However, MCR 2.113(C)(1)(b) excuses the failure to attach a contract to the pleadings if the pleading is "in the possession of the adverse party and the pleading so states[.]" CA's complaint indicated that "[t]he 2015 License Agreement and the Purchase Orders are in GM's possession." Thus, the motion may properly be considered as one brought under MCR 2.116(C)(8).

*Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 529; 740 NW2d 503 (2007). Additionally, we "review[] de novo a trial court's decision on a motion for summary disposition in an action for a declaratory judgment." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 542; 904 NW2d 192 (2017).

## 1. BREACH OF CONTRACT

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in [injury] to the party claiming breach." *El-Khalil*, 504 Mich at 164. Whether a breach occurred in this case turns on the proper interpretation of the termination provision in the 2020 Order Form.[5] "The goal of contract interpretation is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 393; 964 NW2d 846 (2020) (quotation marks and citation omitted). "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 272; 1 NW3d 308 (2022) (quotation marks and citation omitted). "The law presumes that the contracting parties' intent is embodied in the actual words used in the contract[]." *Grosse Pointe Park v Michigan Muni Liability & Prop Pool*, 473 Mich 188, 218-219; 702 NW2d 106 (2005). When the language of a contract is unambiguous, the contract must be interpreted as written. *Total Quality, Inc v Fewless*, 332 Mich App 681, 694; 958 NW2d 294 (2020).

CA initially contends that the definition of "Existing Agreement" in the 2020 Order Form termination provision indicates that GM was required to either terminate all of the agreements between the parties, or none of them. This interpretation is incorrect. The 2020 termination provision states, in relevant part:

> GM may terminate the Agreement(s), this Order Form, together with each and all Purchase Orders, *or* any order forms or other ordering documents in effect as of the date of termination, (collectively, the 'Existing Agreement'), without cause and without further charge or expense at any time, immediately upon written notice to CA . . . .

"The word 'or' is a disjunctive term used to express a choice between alternatives." *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 476; 986 NW2d 427 (2022). The use of the disjunctive "or" between the listed documents in the 2020 Order Form that make up the "Existing Agreement" thus creates alternatives and allows for termination of one or more of the listed items. According to the plain language of the contract, GM could therefore elect to terminate the 2020 Order Form alone, without also terminating the underlying 2015 License Agreement. Further, the collective label "Existing Agreement" does not transform "or" into "and." As the trial court properly explained, "Existing Agreement" is a collective shorthand whose contents depend on which

---

[5] The plain language of the Order Form termination provision states that it "expressly supersedes" the termination provision in the 2015 License Agreement. The parties do not meaningfully dispute that the 2020 termination provision controls.

agreements GM selects to terminate. CA's contrary reading would render "or" meaningless and conflict with the portion of the provision stating that "neither party shall have further obligations under the terminated portions of the this [sic] Agreement[.]" Additionally, the "terminated portions" phrase further indicates that the termination provision allows for selective termination.

CA also argues that the parties' deletion of the phrase "in whole or in part," which appears only in Section 5.3 of the 2015 License Agreement, means that the parties intended to prevent GM from engaging in selective termination of specific orders. CA reasons that the parties instead included the phrase "together with each and all Purchase Orders," in the 2020 Order Form to indicate that the termination provision precludes selective termination. However, reading the clause in context, it is clear that the omission of the phrase "in whole or in part" only prevents GM from selectively terminating items within a *single instrument* (i.e., terminating only part of the Order Form), not the ability to choose which instruments to terminate from the disjunctive list that makes up the parties "Existing Agreement." The grammatical last-antecedent rule, while not absolute, generally provides that a modifying word or clause is confined to the immediately preceding clause—otherwise known as the last antecedent—unless it is apparent from the text that the drafter intended otherwise. *Zug Island Fuels Co, LLC v Dep't of Treasury*, 341 Mich App 319, 323 n 2; 989 NW2d 879 (2022). Thus, under the last-antecedent rule, the clause "together with each and all Purchase Orders" only modifies the preceding phrase, "this Order Form[.]" We see no contrary intention in the text of the contract. Accordingly, the 2020 Order Form requires only that GM terminate all purchase orders issued under the Order Form if it also elects to terminate the Order Form itself. We do not interpret the clause as broadly requiring termination of all outstanding agreements between the parties.

CA also briefly argues that this Court should conclude that the termination provision is ambiguous and that extrinsic evidence supports its interpretation. "A contract is ambiguous when it is equally susceptible to different interpretations or when two provisions irreconcilably conflict with each other." *Pego v Karamo*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 371299); slip op at 18. We do not agree with CA's contention that the termination provision is susceptible to multiple interpretations. At most, CA's argument regarding ambiguity amounts to a disagreement with the contract's terms rather than a demonstration of genuine ambiguity requiring judicial intervention. Reversal on this basis is not required.

Based on the foregoing, GM effectively terminated the 2020 Order Form and all associated purchase orders before the final-year prepayment date. The notice of termination that GM sent to CA on September 1, 2022, identified and terminated the Order Form and "any purchase orders associated with the Order Form", as required by the 2020 termination provision. Without an amount due, failure to pay cannot constitute breach. Further, the termination provision expressly provides that termination is "without further charge or expense." That term bars CA's effort to collect a final-year lump sum after a timely termination for convenience. Accordingly, no breach of the parties' contract occurred.

## 2. DECLARATORY JUDGMENT

"In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). "An actual

controversy exists when declaratory relief is needed to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Mercurio v Huntington Nat'l Bank*, 347 Mich App 662, 673; 16 NW3d 748 (2023) (quotation marks and citation omitted). "[T]he existence of an 'actual controversy' is a condition precedent to the invocation of declaratory relief." *Van Buren Charter Twp*, 319 Mich App at 545 (quotation marks and citation omitted).

In this case, CA's request for a declaratory judgment rested entirely on its ability to plead and prove its breach-of-contract claim. However, as discussed herein, the trial court correctly resolved CA's breach of contract claim in GM's favor. CA has not proffered another basis for declaratory relief. Accordingly, the trial court did not err by declining to grant a declaratory judgment in CA's favor.

## B. LEAVE TO FILE AMENDED COMPLAINT

CA also argues that the trial court abused its discretion by declining to grant its request for leave to amend its complaint. We disagree.

A trial court's decision on a motion to amend the pleadings is reviewed for an abuse of discretion. *Wolfenbarger v Wright*, 336 Mich App 1, 14; 969 NW2d 518 (2021). An abuse of discretion occurs when the trial court "selects an outcome that falls outside the range of reasonable and principled outcomes." *Id*.

In support of its request for leave to amend in the trial court, CA stated: "To the extent that the Court determines CA's complaint is insufficient to state breach of contract and declaratory judgment claims, CA should be granted leave to amend its complaint to address any defects the Court determines are contained therein." CA reiterates this request almost verbatim on appeal. The trial court denied CA's request for leave to amend the complaint, finding that amendment "would be futile because, under the plain language of the Termination for Convenience clause, GM is able to terminate the Order Form and associated Purchase Orders without terminating the other listed documents, including the 2015 License Agreement."

Under MCR 2.116(I)(5), "[i]f the grounds [for summary disposition] asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." Generally, leave to amend "shall be freely given when justice so requires." MCR 2.118(A)(2). A motion for leave to amend

> should be denied only for the following particularized reasons: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment. [*Lane v KinderCare Learning Ctrs, Inc.*, 231 Mich App 689, 697; 588 NW2d 715 (1998).]

Amendment of a complaint is futile "if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face; (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction." *PT Today, Inc v Comm'r of Office of Fin and Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (quotation marks and citations omitted).

We agree that amendment of the complaint would be futile in this instance. The trial court correctly concluded that CA failed to establish breach of contract or entitlement to a declaratory judgment based on the pleadings alone, in accordance with MCR 2.116(C)(8). CA did not seek to add claims via amendment in the trial court. Instead, it appears that CA merely wished to have a second chance to prove its breach-of-contract and declaratory-judgment claims. As this Court has stated, amendment is futile if the amendment would involve "restat[ing] allegations already made[.]" *PT Today*, 270 Mich App at 143. Accordingly, the trial court did not abuse its discretion by denying CA's request for leave to amend the complaint.

Affirmed.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick